Wilbur O. Colom, MS SBN 6403 (*Pro Hac Vice Pending*)
wil@colom.com
COLOM AND BRANT LLC
SPECIAL COUNSEL TO THE PRESIDENT OF THE NAACP
P.O. Box 866
Columbus, MS 39703
Telephone: (662) 327-0903
Facsimile:  (662) 329-4832

Gerald B. Singleton, SBN 208783
gsingleton@ssmsjustice.com
John C. Lemon, SBN 175847
jlemon@ssmsjustice.com
SINGLETON SCHREIBER McKENZIE & SCOTT, LLP
450 A Street, 5th Floor
San Diego, CA  92101
Tel.  (619) 771-3473
Fax.  (619) 255-1515

Attorneys for Plaintiff
ROGER WAYNE PARKER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER WAYNE PARKER,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>COUNTY OF RIVERSIDE; PAUL E. ZELLERBACH, individually and in his official capacity as County of Riverside District Attorney; SEAN LAFFERTY, individually and in his official capacity; and TRICIA FRANSDAL, individually and in her official capacity; JEFF VAN WAGENEN, individually.<br><br>　　　　Defendants. | Case No:<br><br>**Unlimited Civil Case**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**42 U.S.C. § 1983 – Malicious Prosecution;**<br>**42 U.S.C. § 1983 – Withholding Exculpatory Evidence;**<br>**42 U.S.C. § 1983 – Unconstitutional Official Policy, Practice, or Custom (*Monell* Claim);**<br>**Declaratory and Injunctive Relief**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Roger Wayne Parker, submits the following complaint for violations of his Constitutional rights under 42 U.S.C. § 1983 and the laws of the State of California against Defendants Paul Zellerbach, Sean Lafferty, Jeff Van Wagenen, and Tricia Fransdal.

## I.

## Introduction

For almost four years, the Riverside County District Attorney's Office prosecuted Roger Wayne Parker for a murder that the District Attorney knew Parker did not commit. In fact, District Attorney Zellerbach and his supervisory assistant district attorneys insisted on prosecuting Parker notwithstanding the express recommendations of two different trial lawyers in the office, both of whom repeatedly told their supervisors – both in face-to-face meetings and in lengthy memoranda – to dismiss the case because Parker was innocent.

Zellerbach and his supervisory attorneys disregarded those recommendations, as well as their ethical obligations, for a political purpose: because Zellerbach believed that dismissing high-profile cases weakened him as a political candidate. The Riverside Superior Court also refused to intercede – again for an explicitly political purpose – when Riverside Superior Court Judge Jack Ryan told Deputy D.A. Chris Ross that he would not dismiss the case "because he wanted to get reelected."

Unfortunately, this behavior is not an outlier for the Riverside County D.A.'s Office, which has a decades-old practice of withholding exculpatory evidence and refusing to dismiss cases against innocent defendants. Roger Wayne Parker spent four years behind bars because of this callous and unethical practice. He now seeks both monetary redress and meaningful reform.

//
//
//

## II.

## Statement of Facts

**A.  The Murder of Brandon Stevenson and the Riverside D.A.'s Conscious Decision to Prosecute an Innocent Man**

On the night of March 18, 2010, Brandon Stevenson was murdered in the Desert Hot Springs home of Willie Womack. Womack called the police and told the investigating officers that he had found Stevenson – who had been brutally stabbed and beaten – on the floor of Womack's living room when he got home.

Womack's roommate, Roger Parker, was not at home when the police arrived. Parker had been at a friend's house watching television all day, returning only after a neighbor told him that the police were at his house. The homicide detectives initially focused their inquiry on Womack and Parker but were convinced after speaking with Womack that he was not the killer. They then homed in on Parker exclusively, detaining him and interrogating him for over 15 hours --all the time encouraging him to admit that he had killed Stevenson in self-defense. Parker, who is developmentally delayed,[1] denied killing Stevenson for several hours before ultimately confessing "very sarcastically" because "the detectives had told him [that] self-defense was legal and denial only landed him in jail."[2]

//
//
//

---

[1] According to records obtained through the County of Riverside School District, Parker has an IQ of 75-79 – significantly below the average person's IQ, which is 100.
[2] July 22, 2011 Memorandum by Senior Deputy D.A. Lisa DiMaria to Assistant D.A. Sean Lafferty and Supervising Deputy D.A. Otis Sterling at 2 (Exhibit A).

The first prosecutor assigned to the case, Deputy D.A. Lisa DiMaria, immediately recognized that Parker's confession was a sham because it was both coerced and completely inconsistent with the physical evidence.[3]

At a staff meeting in March 2010 (just a few days after the killing), DiMaria expressed her "serious concerns about [Parker's] guilt."[4] Over a year later, DiMaria "received the results from the Department of Justice's analysis of the physical evidence [(including some of the DNA evidence)] which [] reinforced [DiMaria's] concern for the actual guilt of the defendant."[5] On July 22, 2011, DiMaria wrote a memorandum to her supervisors requesting authorization to "no file" (i.e., dismiss) the case after the preliminary hearing because Parker was very likely innocent.[6]

Rather than dismissing, however, supervisory Assistant D.A. Sean Lafferty removed DiMaria from the case and reassigned it to Deputy D.A. Chris Ross, telling Ross that DiMaria "expressly stated, 'The man's innocent. He did not do it.' And [that Di Maria] refused to prosecute the case."[7]

According to Ross, Lafferty made it crystal clear that the case was being reassigned to him because "Di Maria thought the man was innocent" but the D.A. still wanted him prosecuted.[8] Supervisory D.A. Tricia Fransdal (who would ultimately dismiss the case against Parker three years later), as well as DiMaria herself, also told Ross in separate conversations that the case was being

---

[3] Just one example of the myriad inconsistencies was Parker's coached admission that he had stabbed Stevenson in the head with a shard from a broken flower pot, which "ma[de] absolutely no sense. . . . The piece of pottery that the defendant says that he picked up and hit the victim over the head with, had no blood, hair, or tissue on it. The pottery was jagged and frail, not able to inflict the type of injury to the victim's head." December 8, 2011 Memorandum by Deputy D.A. Chris Ross at 8 (Exhibit C). The medical examiner later concluded that a kitchen knife was the cause of the lethal wound. December 9, 2014 deposition of Chris Ross in *Ross v. County of Riverside, et al.,* at 114 (Exhibit B).
[4] Exhibit A at 1.
[5] *Id.*
[6] *Id.*
[7] Exhibit B at 106.
[8] *Id.* at 104.

4

Complaint for Violations of Civil and Constitutional Rights

reassigned to him because DiMaria believed that Parker was innocent.[9] On November 30, 2011, DiMaria sent her case memorandum, via email, to Ross. In the body of the email she wrote in bold face: "**I already gave you my caveat about this . . . .**" which was a reference to DiMaria's belief that Parker was innocent.[10]

In late 2011, roughly six months after being assigned to the case, Ross told Lafferty several times that Parker was being held without probable cause and that there was no way that the case could be proven beyond a reasonable doubt:

> We can't prove the case. I agree with [DiMaria's] assessment. We can't prove it. [DiMaria] thinks the man is innocent. I'm not going to say he's innocent. That's not my job. My job is to tell you whether or not I can prove at least beyond a reasonable doubt or [if we] even [have] probable cause to believe he committed the crime. I don't think we have either. . . . We need probable cause to hold him. We don't have probable cause. The only way we can file the information is if we can prove beyond a reasonable doubt or have a good faith belief that we can prove the case beyond a reasonable doubt, and there is no way in my opinion that any jury could find this man guilty proven [sic] beyond a reasonable doubt, so we're going to have to dismiss the case.[11]

These conversations angered Lafferty, who became overtly hostile and whose response to Ross telling him that he was holding an innocent man in jail without legal cause was "Write me a memo."[12]

Over the course of the next two-and-a-half years, Ross wrote several memos to Lafferty, all of which recommended dismissing the case because there was no probable cause to pursue it, much less sufficient evidence to prove it

---

[9] *Id.* at 106.
[10] Di Maria email (Exhibit D) (emphasis in original).
[11] Exhibit B at 110-11.
[12] *Id.* at 120.

beyond a reasonable doubt. In response, Lafferty required Ross to specifically identify the reasons that he believed Parker's confession was both coerced and false:

> And then he said, "Well you know, you make – made comments in your memo about the interview. Why don't you go ahead and detail [for] me [the] specific statements in the interview that you think were coerced or gave you reason to believe that this guy wasn't telling the truth[?]" So then I had to sit down and I had to go through the entire transcript for however long it was, hours of testimony [sic], and I had to pick out the things that were inconsistent with the forensic evidence and detail a memorandum on that.[13]

Notwithstanding these conversations and memoranda detailing the utter absence of probable cause, Zellerbach, Lafferty, Van Wagenen, Fransdal,[14] and other supervisory assistant D.A.s refused to dismiss the case. All the while, Roger Parker sat in jail, charged with a crime that he did not commit.

Accordingly, during a chambers conference before one of Parker's scheduled preliminary hearings,[15] Ross raised his concerns about Parker's guilt with the assigned judicial officer, Riverside Superior Court Judge Jack Ryan. Specifically, Ross suggested that Ryan could dismiss the case after conducting the preliminary hearing. In response, Ryan told Ross that he would not dismiss the case – regardless of the state of the evidence – because he wanted to get reelected.

---

[13] *Id.* at 122-23.
[14] At one point, as a direct result of Ross's memos documenting the absence of probable cause to hold Parker, Fransdal (a supervisor) told Ross that she had been assigned to the case but at the same time insisted that Ross would "retain the case and [] make appearances and [] handle the case." *Id.* at 139-40. After Ross obtained the jail calls in which Womack admitted that he was the killer, Fransdal told Ross, "Deal with Sean Lafferty . . . I want nothing to do with th[is] case." *Id.* at 141.
[15] Parker's case never made it to a preliminary hearing. The prelim was continued several times over the course of the four years that the case was pending, before it was ultimately dismissed.

In September or October 2013, Ross obtained the recorded jail calls of Parker's former roommate, Willie Womack, who had been in custody on another charge. Ross suspected that Womack had murdered Stevenson and he thought that Womack might have admitted to the crime in one of his calls. Ross was right on both counts: Womack explicitly admitted in those calls that he had killed Stevenson.

Ross promptly informed Lafferty, who – instead of dismissing the case – ordered Ross *not* to disclose Womack's jail calls to Parker's lawyer.[16]

Ross was in disbelief: "When another person says, 'I killed this guy, ha, ha, ha. I cut his head off, ha, ha, ha,' you need to turn that over [to the defense]."[17] At the same time, Lafferty removed Ross from the case, telling him "Give me the case. I'll take care of it."[18] The D.A.'s office did not get around to dismissing the complaint against Parker until March 6, 2014 – roughly six months later – when Fransdal moved to dismiss without prejudice "due to insufficiency of the evidence."[19] Parker was unaware of the existence of Womack's recorded confession until October 2020.

**B. The Riverside County D.A.'s Pattern and Practice of Malicious Prosecution and Withholding Exculpatory Evidence**

The Riverside County D.A.'s office has a well-documented practice of committing prosecutorial misconduct – including withholding exculpatory evidence in high profile cases – which comes from the top down.

//
//
//

---

[16] *Id.*
[17] *Id.* at 142.
[18] *Id.* at 141.
[19] Exhibit E at 1 (transcript of March 6, 2014 hearing).

7

Complaint for Violations of Civil and Constitutional Rights

For example, in *Baca v. Adams*,[20] a habeas corpus appeal of a double-murder conviction before a Ninth Circuit panel in 2015, the undisputed facts were that one Riverside Deputy D.A. presented the false testimony of another Riverside Deputy D.A. to bolster the credibility of a critical cooperating witness.

Specifically, the Deputy D.A. prosecuting Baca called another Deputy D.A. to testify that a defendant in another murder case who had become a jailhouse informant had not received any benefits for testifying against defendant Baca. That testimony was false, however, because the jailhouse informant had, in fact, received a four-year sentence reduction for his testimony against Baca. Both prosecutors thus withheld exculpatory evidence (i.e., the fact that Melendez had received a significant benefit for his testimony against Baca) and conspired to obstruct justice and to commit perjury.

The Ninth Circuit Court of Appeals was not amused. While all three judges assigned to the case chastised the Deputy Attorney General for the state's conduct, the most pointed criticism came from former Chief Judge Alex Kozinski, who inquired as to whether the Deputy D.A. who falsely testified that the informant had not received benefits had been charged with perjury or whether either prosecutor had been disciplined for his misconduct. When the answer to both those questions was "no," Kozinski commented that "the total silence on this suggests that this is the way it's done. I mean they got caught this time but they're going to keep doing it because they have state judges who are willing to look the other way."[21]

//
//

---

[20]  13-53162. The video of the oral argument can be viewed here: Watch recording for Johnny Baca v. Derral Adams, No. 13-56132 (uscourts.gov)..

[21]  The significance of this comment is hard to overstate. The Chief Judge of the Ninth Circuit Court of Appeals, the largest federal appellate court in the United States, stated on the record that the Riverside County District Attorney's office has a pattern and practice of engaging in prosecutorial misconduct.

Chief Judge Kozinski then invited the Deputy Attorney General to confer with the Attorney General herself[22] to consider voluntarily remanding the case for a new trial – making it quite clear that if she failed to do so, the court would issue a scathing opinion that would publicly humiliate both the Riverside D.A.'s Office and the Attorney General. The A.G. took Kozinski up on his invitation to avoid a public reprimand and the case did not result in a published opinion.

According to a 2017 Harvard Law School study, Riverside County ranked fifth in the State of California over a six-year period with respect to judicial findings of misconduct, with 32 findings and four reversals.[23]

## C. Former D.A. Zellerbach's History of Malfeasance in the Interest of Political Gain

Former D.A. Paul Zellerbach, meanwhile, has a well-documented history of committing both judicial and prosecutorial malfeasance for political advantage.

Before being elected D.A. in 2011, Zellerbach had been a Superior Court judge for 11 years. On November 3, 2011, he was publicly admonished by the California Commission on Judicial Performance for violating "around a half-dozen canons in the California Code of Judicial Ethics."[24] Those violations included a March 26, 2009 speech that Zellerbach gave to the Riverside County Deputy District Attorneys Association, where he advised his audience "to hold off on endorsing a candidate in the following year's D.A. race." Zellerbach also disparaged the way the office was being run at the time, which "gave the appearance that he was opposing a candidate for nonjudicial office." Both those actions violated the judicial canon of ethics. Zellerbach also first sought an

---

[22] The Attorney General at the time is the current Vice President, Kamala Harris.
[23] Dozens of convictions tossed out of Southern California courts because of prosecutors' bad behavior, Harvard study says – Redlands Daily Facts
[24] UPDATE: Past Ethics Violations Dog Riverside County DA | Lake Elsinore, CA Patch

9

Complaint for Violations of Civil and Constitutional Rights

endorsement more than a week before declaring that he was a candidate, which was another ethical breach.[25]

In November 2014, Deputy D.A. John Aki and the Riverside County Deputy District Attorney's Association sued Zellerbach and the county, alleging that Zellerbach reassigned Aki to Indio – a four-hour daily commute – "for the purpose of deliberately imposing hardship and burden on [Aki]" because Aki had openly supported then-Deputy D.A. Mike Hestrin's campaign to replace Zellerbach as the D.A.[26]

On April 23, 2014, Zellerbach was filmed vandalizing the campaign sign of a political opponent, Michael Hestrin, in Indio. He later pleaded guilty to a misdemeanor and received a public reproval from the state bar.[27]

## III.

## Jurisdiction and Venue

This action arises under 42 U.S.C. §1983. The Court has jurisdiction to issue declaratory and/or injunctive relief pursuant to 28 U.S.C. §§ 2201 & 2202 and Federal Rule of Civil Procedure 57.

Venue in this Court is proper as the acts and omissions alleged herein occurred in the County of Riverside, which is within the Central District of California.

//
//
//

---

[25] *Id.*
[26] Turmoil in SoCal District Attorney's Office – Courthouse News Service
[27] Paul Edwin Zellerbach #83086 - Attorney Licensee Search (ca.gov)

# IV.
# Parties

**A. Plaintiff**

Plaintiff, Roger Wayne Parker, is a United States Citizen and a resident of the County of Riverside.

**B. Defendants**

Defendant County of Riverside is a chartered public entity, empowered under the laws of the State of California with the authority to act as the governing party for the County of Riverside. The individual defendants performed all the alleged acts in the name of the County of Riverside (although beyond the scope of "the traditional functions of an advocate").[28]

Defendant Paul Zellerbach was the District Attorney for the County of Riverside during the relevant period. Zellerbach is named individually and in his official capacity.

Defendant Sean Lafferty is an employee of the County of Riverside (currently a judge of the Superior Court). During the relevant period, he was an employee of the Riverside County D.A.'s Office and an agent of Zellerbach. Laffety is named individually and in his official capacity.

Defendant Tricia Fransdal is an employee of the County of Riverside. During the relevant period, she was an employee of the Riverside County D.A.'s Office and an agent of Zellerbach. Fransdal is named individually and in her official capacity.

Defendant Jeff Van Wagenen was a supervising Assistant District Attorney, under Zellerbach, for the County of Riverside during the relevant period. Wagenen is named individually and in his official capacity.

//
//

---

[28] *Genzler v. Longanbach,* 410 F.3d 630, 636 (9th Cir. 2005).

Complaint for Violations of Civil and Constitutional Rights

# V.
# Causes of Action
## First Cause of Action
## 42 U.S.C. § 1983

**Malicious Prosecution in Violation of the Fourth and Fourteenth Amendments, Against the County of Riverside, Paul Zellerbach, Sean Lafferty, Tricia Fransdal, and Jeff Van Wagenen**

Plaintiff realleges and incorporates by reference the foregoing statement of facts and identification of parties.

"In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'"[29]

Here, Defendants Zellerbach, Lafferty, Van Wagenen, and Fransdal acted deliberately and in concert to maliciously prosecute Plaintiff, despite the fact that the two trial attorneys assigned to the case (DiMaria and Ross) had been repeatedly telling them that Plaintiff was innocent. This was a violation of Plaintiff's Fourth Amendment right (as incorporated through the Fourteenth Amendment) not to be prosecuted or incarcerated in the absence of probable cause.

Defendant Zellerbach directed his supervisory attorneys to persist in this prosecution of an innocent man for political advantage, which – as an administrative function – is beyond the scope of a D.A.'s traditional function as an advocate.[30] Defendants Lafferty, Van Wagenen, and Fransdal carried out Zellerbach's direction to prosecute Plaintiff while specifically directing trial counsel (Ross) to continue with additional investigation. Lafferty's, Van

---

[29] *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1066 (9th Cir. 2004) (alteration in original) (quoting *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995)).
[30] *See Genzler,* 410 F.3d at 636.

Wagenen's, and Fransdal's malicious actions were thus part of the "investigatory process" (in advance of a probable cause finding), rather than undertaken while "performing the traditional functions of an advocate." Accordingly, Defendants are not entitled to absolute immunity.[31]

Plaintiff was obviously prejudiced by Defendants' decision to prosecute him even though they knew he was innocent. Indeed, he spent *four years* wrongfully incarcerated. As a proximate result of Defendants' actions, Plaintiff suffered severe emotional distress, as well as economic damages in an amount according to proof at trial.

The Defendants' decision to prosecute and incarcerate a man they well knew to be innocent was both deliberate and reckless. It accordingly justifies the award of exemplary damages against the Defendants (in an amount according to proof at trial) to deter them from engaging in similar conduct in the future. Plaintiff is also entitled to attorneys' fees and costs.

## Second Cause of Action

## 42 U.S.C. § 1983

**Violation of Fifth Amendment Right to Due Process and Exculpatory Evidence, Against the County of Riverside, Paul Zellerbach, Sean Lafferty, Tricia Fransdal, and Jeff Van Wagenen**

Plaintiff realleges and incorporates by reference the foregoing statement of facts and identification of parties.

//
//
//

---

[31] *See id.*; *see also id.* at 637 ("The [Supreme] Court denied absolute immunity to prosecutors who had fabricated evidence 'during the early stage of the investigation' when 'police officers and assistant prosecutors were performing essentially the same investigatory functions.'") (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

The United States Supreme Court held in *Brady v. Maryland* that a prosecutor must disclose evidence favorable to the accused, where the evidence is material to either guilt or punishment.[32]

Here, Deputy D.A. Ross acquired recorded jail calls in which Petitioner's former roommate, Willie Womack, confessed to – and laughed about – the murder of Brandon Stevenson. Since this was the crime for which Plaintiff was being held in custody, there can be no doubt that the evidence of another man confessing to committing this crime was favorable to Petitioner.

Rather than disclosing that evidence to the defense, however, Defendant Lafferty, acting on behalf of the County of Riverside and in concert with Defendants Zellerbach, Van Wagenen, and Fransdal, deliberately withheld that conclusively exculpatory evidence from Petitioner, who did not learn about its existence until October 2020. This was a violation of Plaintiff's Fifth Amendment right to due process (as incorporated through the Fourteenth Amendment).

Because Defendants' decision to withhold the exculpatory jail calls took place before a judicial finding of probable cause, the decision was part of the investigatory process and not within the ambit of the traditional functions of an advocate. Defendants accordingly are not entitled to absolute immunity.[33]

Plaintiff was prejudiced by Defendants' decision to withhold the jail calls that constituted overwhelming proof of his innocence. He languished at least an additional six months behind bars (from September 2013 to March 6, 2014) and did not learn about the exculpatory jail calls until October 2020. As a proximate result of Defendants' actions, Plaintiff suffered severe emotional distress, as well as economic damages in an amount according to proof at trial.

The Defendants' decision to withhold exculpatory evidence from a criminal defendant they knew to be innocent was both deliberate and reckless. It

---

[32] 373 U.S. 83, 87 (1963).
[33] *Genzler,* 410 F.3d at 636.

Complaint for Violations of Civil and Constitutional Rights

accordingly justifies the award of exemplary damages against the Defendants (in an amount according to proof at trial) to deter them from engaging in similar conduct in the future. Plaintiff is also entitled to attorneys' fees and costs.

### Third Cause of Action

### 42 U.S.C § 1983 (*Monell* Claim)

### Unconstitutional Official Policy, Practice, or Custom, Against the County of Riverside

Plaintiff realleges and incorporates by reference the foregoing statement of facts and identification of parties.

The County permitted, acquiesced to, and/or ratified the unlawful custom, pattern, and practice of maliciously prosecuting innocent defendants in violation of the Fourth and Fourteenth Amendments, coercing false confessions in violation of the Fifth, Sixth, and Fourteenth Amendments, and withholding exculpatory evidence from defendants, in violation of the Fifth and Fourteenth Amendments.

The County facilitated this unlawful custom and practice by encouraging police officers to obtain coerced confessions and by intimidating and punishing lower-level prosecutors, who were forced to elect between fulfilling their constitutional and ethical obligations (i.e., not prosecuting innocent people and turning over exculpatory evidence to the defense) and keeping their jobs.

In maintaining this unlawful practice, the County acted for the purpose of political advantage. Its actions were thus administrative and investigative and not within the traditional functions of an advocate.

Plaintiff spent four years wrongfully incarcerated as a proximate result of the County's actions and inactions. He is accordingly entitled to compensation for past and future damages, including severe emotional distress, in an amount to be proven at trial.

1  The Defendants also acted deliberately or in reckless disregard of
2 Plaintiff's constitutional rights, which warrants exemplary damages in an amount
3 according to proof at trial. Plaintiff is also entitled to attorneys' fees and costs.

### Fourth Cause of Action

### Declaratory Relief

Plaintiff realleges and incorporates by reference the foregoing statement of facts and identification of parties.

This Court enjoys the discretion to grant declaratory relief "in the interests of preventive justice."[34] That is, "to declare rights rather than execute them."[35] "In giving declaratory relief[,] a court has the powers of a court of equity."[36]

As set forth above, the County of Riverside District Attorney's Office has – for years – engaged in a pattern of prosecutorial misconduct, including: 1) maliciously prosecuting innocent defendants in the interest of political expediency; 2) withholding exculpatory evidence from criminal defendants; and 3) encouraging police officers to obtain coerced confessions. This pattern is so widespread and egregious that the former Chief Judge of the Ninth Circuit Court of Appeals commented on it on the record.

Plaintiff requests that this Court fashion an appropriate injunction to permanently enjoin the D.A.'s Office from engaging in these practices.

### Demand for Jury Trial

Plaintiff hereby respectfully requests and demands a trial by jury on all causes of action and issues for which a trial by jury is available under the law.

//
//

---

[34] *Travers v. Louden*, 254 Cal. App. 2d 926, 931 (1967).
[35] *Id.*
[36] *Los Angeles v. Glendale*, 23 Cal. 2d 68, 81 (1943).

Complaint for Violations of Civil and Constitutional Rights

**Prayer for Relief**

Plaintiff prays for judgment against Defendants as follows:

1. As to the first and second causes of action, compensatory damages, including all special/economic damages and all general/non-economic damages incurred as caused by the Defendants according to proof;
   a. guaranteeing the commitment of the County to provide sufficient resources to ensure implementation of these reforms; and
   b. reporting compliance with these reforms for a period of five years.
2. For attorneys' fees pursuant to 42 U.S.C. §1983 and §1988;
3. Interest according to the highest rate provided by law;
4. For costs of suit incurred; and
5. For such other and further relief as this Court may deem just and proper.

Respectfully Submitted

Dated: July 29, 2021

/s/ *Gerald B. Singleton*
Gerald B. Singleton

Attorney for Plaintiff
Roger Wayne Parker