Kimberly S. Trimble (CA SBN 288682)
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Suite 1025
San Diego, CA  92108
ktrimble@singletonschreiber.com
Tel.  (619) 771-3473
Fax.  (619) 255-1515

Wilbur O. Colom (MS SBN 6403) (*Pro Hac Vice*)
wil@colom.com
COLOM AND BRANT LLC
SPECIAL COUNSEL TO THE PRESIDENT OF THE NAACP
P.O. Box 866
Columbus, MS 39703
Telephone: (662) 327-0903
Facsimile: (662) 329-4832

Attorneys for Plaintiff Roger Wayne Parker

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER WAYNE PARKER,<br><br>      Plaintiff,<br><br>      v.<br><br>COUNTY OF RIVERSIDE; PAUL E. ZELLERBACH, individually and in his official capacity as County of Riverside District Attorney; SEAN LAFFERTY, individually and in his official capacity; and TRICIA FRANSDAL, individually and in her official capacity; JEFF VAN WAGENEN, individually and in his official capacity.<br><br>      Defendants. | Case No: 21-cv-1280-JGB-KK<br><br>**Unlimited Civil Case**<br><br>**COMPLAINT FOR VIOLATIONS OF:**<br><br>**(1) Malicious Prosecution (42 U.S.C. § 1983)**<br><br>**(2) *Tatum-Lee* Claim (42 U.S.C. § 1983)**<br><br>**(3) *Monell* Claim—Malicious Prosecution**<br><br>**(4) *Monell* Claim—*Tatum-Lee* Violations**<br><br>**JURY TRIAL DEMANDED** |

Complaint for Violations of Civil and Constitutional Rights

1    Plaintiff, Roger Wayne Parker, submits the following first amended

2  complaint for violations of his Constitutional rights under 42 U.S.C. § 1983 and

3  the laws of the State of California against Defendants the County of Riverside,

4  Paul Zellerbach, Sean Lafferty, Tricia Fransdal, and Jeff Van Wagenen.

5                                          **I.**

6                                  **Introduction**

7    1.    For almost four years, the Riverside County District Attorney's Office

8  prosecuted Roger Wayne Parker for a murder that the District Attorney knew

9  Parker did not commit. In fact, District Attorney Zellerbach and his supervisory

10  assistant district attorneys insisted on prosecuting Parker notwithstanding the

11  express recommendations of two different trial lawyers in the office, both of whom

12  repeatedly told their supervisors – both in face-to-face meetings and in lengthy

13  memoranda – to dismiss the case because Parker was innocent.

14    2.    Zellerbach and his supervisory attorneys disregarded those

15  recommendations, as well as their ethical obligations, for a political purpose:

16  because Zellerbach believed that dismissing high-profile cases weakened him as a

17  political candidate. The Riverside Superior Court also refused to intercede – again

18  for an explicitly political purpose – when Riverside Superior Court Judge Jack

19  Ryan told Deputy D.A. Chris Ross that he would not dismiss the case "because he

20  wanted to get reelected."

21    3.    Unfortunately, this behavior is not an outlier for the Riverside County

22  D.A.'s Office, which has a decades-old practice of withholding exculpatory

23  evidence and refusing to dismiss cases against innocent defendants. Roger Wayne

24  Parker spent four years behind bars because of this callous and unethical practice.

25  He now seeks both monetary redress and meaningful reform.

26  ///

27  ///

28  ///

---

Complaint for Violations of Civil and Constitutional Rights

## II.

### Statement of Facts

**A.    The Murder of Brandon Stevenson and the Riverside D.A.'s Conscious Decision to Prosecute an Innocent Man**

4.    On the night of March 18, 2010, Brandon Stevenson was murdered in the Desert Hot Springs home of Willie Womack. Womack called the police and told the investigating officers that he had found Stevenson – who had been brutally stabbed and beaten – on the floor of Womack's living room when he got home.

5.    Womack's roommate, Roger Parker, was not at home when the police arrived. Parker had been at a friend's house watching television all day, returning only after a neighbor told him that the police were at his house. The homicide detectives initially focused their inquiry on Womack and Parker but were convinced after speaking with Womack that he was not the killer. They then homed in on Parker exclusively, detaining him and interrogating him for over 15 hours -- all the time encouraging him to admit that he had killed Stevenson in self-defense. Parker, who is developmentally delayed,[1] denied killing Stevenson for several hours before ultimately confessing "very sarcastically" because "the detectives had told him [that] self-defense was legal and denial only landed him in jail." *See* July 22, 2011 Memorandum by Senior Deputy D.A. Lisa DiMaria to Assistant D.A. Sean Lafferty and Supervising Deputy D.A. Otis Sterling at 2, Ex. A (hereinafter "July 22 DiMaria Mem.").

---

[1] According to records obtained through the County of Riverside School District, Parker has an IQ of 75-79 – significantly below the average person's IQ, which is 100.

Complaint for Violations of Civil and Constitutional Rights

6.    The first prosecutor assigned to the case, Deputy D.A. Lisa DiMaria, immediately recognized that Parker's confession was a sham because it was both coerced and completely inconsistent with the physical evidence.[2]

7.    At a staff meeting in March 2010 (just a few days after the killing), DiMaria expressed her "serious concerns about [Parker's] guilt." July 22 DiMaria Mem. at 1, Ex. A. Over a year later, DiMaria "received the results from the Department of Justice's analysis of the physical evidence [(including some of the DNA evidence)] which [] reinforced [DiMaria's] concern for the actual guilt of the defendant." *Id.* On July 22, 2011, DiMaria wrote a memorandum to her supervisors requesting authorization to "no file" (i.e., dismiss) the case after the preliminary hearing because Parker was very likely innocent. *Id.*

8.    But the D.A., who was consistently informed about the case, still wanted Parker prosecuted. So rather than dismissing, supervisory Assistant D.A. Sean Lafferty removed DiMaria from the case and reassigned it to Deputy D.A. Chris Ross, telling Ross that DiMaria "expressly stated, 'The man's innocent. He did not do it.' And [that Di Maria] refused to prosecute the case." Ross Dep. at 106, Ex. B.

9.    According to Ross, Lafferty made it crystal clear that the case was being reassigned to him because "Di Maria thought the man was innocent." *Id.* at 104. Supervisory D.A. Tricia Fransdal (who would ultimately dismiss the case against Parker three years later), as well as DiMaria herself, also told Ross in separate conversations that the case was being reassigned to him because DiMaria

---

[2] Just one example of the myriad inconsistencies was Parker's coached admission that he had stabbed Stevenson in the head with a shard from a broken flower pot, which "ma[de] absolutely no sense. . . . The piece of pottery that the defendant says that he picked up and hit the victim over the head with, had no blood, hair, or tissue on it. The pottery was jagged and frail, not able to inflict the type of injury to the victim's head." December 8, 2011, Memorandum by Deputy D.A. Chris Ross at 8, Ex. C (hereinafter "Dec. 8 Ross Mem."). The medical examiner later concluded that a kitchen knife was the cause of the lethal wound. *See* December 9, 2014, deposition of Chris Ross in *Ross v. County of Riverside, et al.,* at 114, Ex. B (hereinafter "Ross Dep.").

Complaint for Violations of Civil and Constitutional Rights

believed that Parker was innocent. *Id.* at 106. On November 30, 2011, DiMaria sent her case memorandum, via email, to Ross. In the body of the email she wrote in bold face: "**I already gave you my caveat about this . . . .**" which was a reference to DiMaria's belief that Parker was innocent. DiMaria Email, Ex. D (emphasis in original).

10.     In late 2011, roughly six months after being assigned to the case, Ross told Lafferty several times that Parker was being held without probable cause and that there was no way that the case could be proven beyond a reasonable doubt:

> We can't prove the case. I agree with [DiMaria's] assessment. We can't prove it. [DiMaria] thinks the man is innocent. I'm not going to say he's innocent. That's not my job. My job is to tell you whether or not I can prove at least beyond a reasonable doubt or [if we] even [have] probable cause to believe he committed the crime. I don't think we have either. . . . We need probable cause to hold him. We don't have probable cause. The only way we can file the information is if we can prove beyond a reasonable doubt or have a good faith belief that we can prove the case beyond a reasonable doubt, and there is no way in my opinion that any jury could find this man guilty proven [sic] beyond a reasonable doubt, so we're going to have to dismiss the case.

Ross Dep. at 110-11, Ex. B.

11.     These conversations angered Lafferty, who became overtly hostile and whose response to Ross telling him that he was holding an innocent man in jail without legal cause was "Write me a memo." *Id.* at 120.

12.     Over the course of the next two-and-a-half years, Ross wrote several memos to Lafferty, all of which recommended dismissing the case because there was no probable cause to pursue it, much less sufficient evidence to prove it beyond a reasonable doubt. In response, Lafferty required Ross to specifically identify the reasons that he believed Parker's confession was both coerced and false:

Complaint for Violations of Civil and Constitutional Rights

And then he said, "Well you know, you make – made comments in your memo about the interview. Why don't you go ahead and detail [for] me [the] specific statements in the interview that you think were coerced or gave you reason to believe that this guy wasn't telling the truth[?]" So then I had to sit down and I had to go through the entire transcript for however long it was, hours of testimony [sic], and I had to pick out the things that were inconsistent with the forensic evidence and detail a memorandum on that.

*Id.* at 122-23.

13.     Notwithstanding these conversations and memoranda detailing the utter absence of probable cause, Zellerbach, Lafferty, Van Wagenen, Fransdal,[3] and other supervisory assistant D.A.s refused to dismiss the case. All the while, Roger Parker sat in jail, charged with a crime that he did not commit.

14.     Accordingly, during a chambers conference before one of Parker's scheduled preliminary hearings, Ross raised his concerns about Parker's guilt with the assigned judicial officer, Riverside Superior Court Judge Jack Ryan. Specifically, Ross suggested that Ryan could dismiss the case after conducting the preliminary hearing. In response, Ryan told Ross that he would not dismiss the case – regardless of the state of the evidence – because he wanted to get reelected.[4]

15.     In September or October 2013, Ross obtained the recorded jail calls that involved Parker's former roommate, Willie Womack. Ross suspected that

---

[3] At one point, as a direct result of Ross's memos documenting the absence of probable cause to hold Parker, Fransdal (a supervisor) told Ross that she had been assigned to the case but at the same time insisted that Ross would "retain the case and [] make appearances and [] handle the case." *Id.* at 139-40. After Ross obtained the jail calls in which Womack admitted that he was the killer, Fransdal told Ross, "Deal with Sean Lafferty . . . I want nothing to do with th[is] case." *Id.* at 141.

[4] Parker's case never made it to a preliminary hearing. The preliminary hearing was continued several times over the course of the four years that the case was pending, before it was ultimately dismissed.

Complaint for Violations of Civil and Constitutional Rights

Womack had murdered Stevenson and he thought that Womack might have admitted to the crime in one of his calls, so he took on the role of an investigator and gathered that evidence. Ross was right on both counts: Womack explicitly admitted in those calls that he had killed Stevenson.

16.   Ross promptly informed Lafferty, who – instead of dismissing the case – ordered Ross *not* to disclose the Womack jail call recordings to Parker's lawyer. *Id.*

17.   Ross was in disbelief: "When another person says, 'I killed this guy, ha, ha, ha. I cut his head off, ha, ha, ha,' you need to turn that over [to the defense]." *Id.* at 142. At the same time, Lafferty removed Ross from the case, telling him "Give me the case. I'll take care of it."  *Id.* at 141.

18.   The D.A.'s office did not get around to dismissing the complaint against Parker until March 6, 2014 – roughly six months later – when Fransdal moved to dismiss without prejudice "due to insufficiency of the evidence." March 6, 2014 Tr. at 2, Ex. E.[5] Parker's appointed attorney Jose Rojo did not make an appearance at that hearing. *Id.* at 1. Rather, another attorney appeared specially on his behalf. *Id.* at 1.

19.   Notably, this dismissal came only a few weeks after a Claim for Damages to Person or Property submitted by Ross was received by the County of Riverside on February 11, 2014. *See* Ross Claim for Damages, Ex. F. In that document, Ross stated that he had been discriminated against by the District Attorney's Office based on, inter alia, "his refusal to prosecute an innocent defendant and his repeated recommendation that the defendant be released from custody and his case dismissed. The defendant remains in custody although the evidence all supports his factual innocence." *Id.* at 2.

---

[5] The reference to page 1 of Exhibit E is the cover sheet to the transcript. Page 2 of Exhibit E is page 1 of the transcript itself.

Complaint for Violations of Civil and Constitutional Rights

20.    Parker was unaware of the existence of Womack's recorded confession until October 2020. He was also unaware of all of the internal memoranda written by DiMaria and Ross that documented their recognition that he was factually innocent and recommended that the charges against him be dismissed.

21.    On July 21, 2021, Parker filed a Petition to Seal and Destroy Arrest Records pursuant to California Penal Code § 851.8, which served as a request for ruling that Parker is factually innocent of the charges for which the arrest was made. In that petition, Parker requested relief from the two-year time restriction to file such a petition because he did not learn until October 2020 that the DA had recorded jail calls of another person confessing to the crime, which it never disclosed to him.

22.    A hearing was held on August 23, 2021, and the petition was granted. *See* Order, *People of the State of Cal. v. Roger Wayne Parker*, Riverside County Superior Court Case No. INF1000647 (July 27, 2021). At that hearing, the County of Riverside District Attorney's Office did not object to the judge's granting the Petition but stated on the record that Womack's recorded confession had been turned over to Parker's criminal defense attorney the day the charges were dismissed. Parker's attorney at the August 23 hearing stated that was a disputed fact but suggested that the dispute need not be resolved for the purposes of the Petition. The judge agreed and granted the Petition without deciding whether the recorded confession had ever been turned over to Parker or his criminal defense attorney.

///
///
///
///
///

Complaint for Violations of Civil and Constitutional Rights

**B.     The Riverside County D.A.'s Pattern and Practice of Malicious Prosecution and Withholding Exculpatory Evidence**

23.     The Riverside County D.A.'s office has a well-documented practice of committing prosecutorial misconduct – including withholding exculpatory evidence in high profile cases – which comes from the top down.

24.     For example, in *Baca v. Adams*, 777 F.3d 1034 (9th Cir. 2015),[6] a habeas corpus appeal of a double-murder conviction before a Ninth Circuit panel in 2015, the undisputed facts were that one Riverside Deputy D.A. presented the false testimony of another Riverside Deputy D.A. to bolster the credibility of a critical cooperating witness. *See* Oral Arg. at 17:30, 21:18, 23:00 in *Baca v. Adams*, 777 F.3d 1034 (9th Cir. 2015), *available at* https://www.ca9.uscourts.gov/media/video/?20150108/13-56132/ (last accessed 9/29/2023).

25.     Specifically, the Deputy D.A. prosecuting Baca called another Deputy D.A. to testify that a defendant in another murder case who had become a jailhouse informant had not received any benefits for testifying against defendant Baca. That testimony was false, however, because the jailhouse informant had, in fact, received a four-year sentence reduction for his testimony against Baca. Both prosecutors thus withheld exculpatory evidence (i.e., the fact that Melendez had received a significant benefit for his testimony against Baca) and conspired to obstruct justice and to commit perjury.

26.     The Ninth Circuit Court of Appeals was not amused. While all three judges assigned to the case chastised the Deputy Attorney General for the state's conduct, the most pointed criticism came from former Chief Judge Alex Kozinski, who inquired as to whether the Deputy D.A. who falsely testified that the informant had not received benefits had been charged with perjury or whether either

---

[6]     The video of the oral argument can be viewed here: https://www.ca9.uscourts.gov/media/video/?20150108/13-56132/

Complaint for Violations of Civil and Constitutional Rights

1    prosecutor had been disciplined for his misconduct. *Id.* at 18:20. When the answer

2    to both those questions was "no," Kozinski commented that "the total silence on

3    this suggests that this is the way it's done. I mean they got caught this time but

4    they're going to keep doing it because they have state judges who are willing to

5    look the other way."[7] *Id.* at 27:27.

6        27.    Chief Judge Kozinski then invited the Deputy Attorney General to

7    confer with the Attorney General herself[8] to consider voluntarily remanding the

8    case for a new trial – making it quite clear that if she failed to do so, the court would

9    issue a scathing opinion that would publicly humiliate both the Riverside D.A.'s

10   Office and the Attorney General. *Id.* at 29?49. The A.G. took Chief Judge Kozinski

11   up on his invitation to avoid a public reprimand and the case did not result in a

12   published opinion.

13       28.    According to a 2017 Harvard Law School study, Riverside County

14   ranked fifth in the State of California over a six-year period with respect to judicial

15   findings of misconduct, with 32 findings and four reversals. *See* Redlands Daily

16   Facts, "Dozens of convictions tossed out of Southern California courts because of

17   prosecutors' bad behavior, Harvard study finds " (July 29, 2017), *available at*

18   https://www.redlandsdailyfacts.com/2017/07/29/dozens-of-convictions-tossed-

19   out-of-southern-california-courts-because-of-prosecutors-bad-behavior-harvard-

20   study-says/ (last accessed 9/29/2023).

21   ///

22   ///

23   ///

24

25

26   [7] The significance of this comment is hard to overstate. The Chief Judge of the Ninth Circuit Court of Appeals, the largest federal appellate court in the United States, stated on the record that the Riverside County District Attorney's office has a pattern and practice of engaging in prosecutorial misconduct.

27

28   [8] The Attorney General at the time is the current Vice President, Kamala Harris.

Complaint for Violations of Civil and Constitutional Rights

**C.      Former D.A. Zellerbach's History of Malfeasance in the Interest of Political Gain**

29.      Former D.A. Paul Zellerbach, meanwhile, took actions as the District Attorney for political advantage, including treating well-publicized cases (like Plaintiff's) differently than other cases. Relatedly, he has a well-documented history of committing both judicial and prosecutorial malfeasance for political advantage.

30.      Before being elected D.A. in 2011, Zellerbach had been a Superior Court judge for 11 years. On November 3, 2011, he was publicly admonished by the California Commission on Judicial Performance for violating "around a half-dozen canons in the California Code of Judicial Ethics."[9] Those violations included a March 26, 2009 speech that Zellerbach gave to the Riverside County Deputy District Attorneys Association, where he advised his audience "to hold off on endorsing a candidate in the following year's D.A. race." Zellerbach also disparaged the way the office was being run at the time, which "gave the appearance that he was opposing a candidate for nonjudicial office." Both those actions violated the judicial canon of ethics. Zellerbach also first sought an endorsement more than a week before declaring that he was a candidate, which was another ethical breach.[10]

31.      In November 2014, Deputy D.A. John Aki and the Riverside County Deputy District Attorney's Association sued Zellerbach and the county, alleging that Zellerbach reassigned Aki to Indio – a four-hour daily commute – "for the purpose of deliberately imposing hardship and burden on [Aki]" because Aki had openly supported then-Deputy D.A. Mike Hestrin's campaign to replace Zellerbach as the D.A.[11]

---

[9]      UPDATE: Past Ethics Violations Dog Riverside County DA | Lake Elsinore, CA Patch

[10]     *Id.*

[11]     Turmoil in SoCal District Attorney's Office – Courthouse News Service

Complaint for Violations of Civil and Constitutional Rights

32.     On April 23, 2014, Zellerbach was filmed vandalizing the campaign sign of a political opponent, Michael Hestrin, in Indio. He later pleaded guilty to a misdemeanor and received a public reproval from the state bar.[12]

## III.

## Jurisdiction and Venue

33.     This action arises under 42 U.S.C. §1983. The Court has jurisdiction to issue declaratory and/or injunctive relief pursuant to 28 U.S.C. §§ 2201 & 2202 and Federal Rule of Civil Procedure 57.

34.     Venue in this Court is proper as the acts and omissions alleged herein occurred in the County of Riverside, which is within the Central District of California.

## IV.

## Parties

**A.    Plaintiff**

35.     Plaintiff, Roger Wayne Parker, is a United States Citizen and a resident of the County of Riverside.

**B.    Defendants**

36.     Defendant County of Riverside is a chartered public entity, empowered under the laws of the State of California with the authority to act as the governing party for the County of Riverside. The individual defendants performed all the alleged acts in the name of the County of Riverside (although beyond the scope of "the traditional functions of an advocate"). *See Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

37.     Defendant Paul Zellerbach was the District Attorney for the County of Riverside during the relevant period. Zellerbach is named individually and in his official capacity.

---

[12]     [Paul Edwin Zellerbach #83086 - Attorney Licensee Search (ca.gov)](#)

Complaint for Violations of Civil and Constitutional Rights

38.     Defendant Sean Lafferty is an employee of the County of Riverside (currently a judge of the Superior Court). During the relevant period, he was an employee of the Riverside County D.A.'s Office and an agent of Zellerbach. Laffety is named individually and in his official capacity.

39.     Defendant Tricia Fransdal is an employee of the County of Riverside. During the relevant period, she was an employee of the Riverside County D.A.'s Office and an agent of Zellerbach. Fransdal is named individually and in her official capacity.

40.     Defendant Jeff Van Wagenen was a supervising Assistant District Attorney, under Zellerbach, for the County of Riverside during the relevant period. Van Wagenen is named individually and in his official capacity.

**V.**
**Causes of Action**

**First Cause of Action**

**Malicious Prosecution (42 U.S.C. § 1983) Against Paul Zellerbach, Sean Lafferty, Tricia Fransdal, and Jeff Van Wagenen**

41.     Plaintiff realleges and incorporates by reference the foregoing statement of facts and identification of parties.

42.     Defendants Zellerbach, Lafferty, Van Wagenen, and Fransdal acted deliberately and in concert to maliciously prosecute Plaintiff, despite the fact that the two trial attorneys assigned to the case (DiMaria and Ross) had been repeatedly demonstrating that Plaintiff was innocent since the outset of the prosecution. There was no probable cause that Plaintiff had committed any criminal offense. This was a violation of Plaintiff's Fourth and Fourteenth Amendment rights.

43.     Additionally, Defendants Zellerbach, Lafferty, Van Wagenen, and Fransdal acted deliberately and in concert, maliciously, to continue the prosecution of Plaintiff, despite the fact that the trial attorney assigned to the case (Ross) had

Complaint for Violations of Civil and Constitutional Rights

obtained recordings of the real killer Willie Womack confessing to the crime, which constituted exculpatory evidence that confirmed Defendants' knowledge that Plaintiff was innocent. Thus, even if there had been probable cause at the time of Plaintiff's arrest, it evaporated by the time the Womack recordings were obtained. Plaintiff remained incarcerated after the exculpatory evidence was acquired by Defendants, and Defendants maliciously did not disclose the existence of this exculpatory evidence to Plaintiff or provide him a copy of the recordings with the intention of depriving Plaintiff of his constitutional rights for Defendants' political gain. This continued incarceration and prosecution of Plaintiff while withholding exculpatory evidence was a violation of Plaintiff's constitutional rights for Defendants' political gain. Plaintiff was not on notice of this violation of his rights until he learned that the prosecutors assigned to his case had always believed he was innocent and in October 2020, when he learned of the existence of the recorded jail calls.

44.     Defendant Zellerbach directed his supervisory attorneys to persist in this prosecution of an innocent man for political advantage, which – as an administrative function – is beyond the scope of a D.A.'s traditional function as an advocate. *See Genzler*, 410 F.3d at 636. Defendants Lafferty, Van Wagenen, and Fransdal carried out Zellerbach's direction to prosecute Plaintiff while specifically directing trial counsel (Ross) to continue with additional investigation. Lafferty's, Van Wagenen's, and Fransdal's malicious actions were thus part of the "investigatory process" (in advance of a probable cause finding), rather than undertaken while "performing the traditional functions of an advocate." Accordingly, Defendants are not entitled to absolute immunity. *See id.*; *see also id.* at 637 ("The [Supreme] Court denied absolute immunity to prosecutors who had fabricated evidence 'during the early stage of the investigation' when 'police officers and assistant prosecutors were performing essentially the same

investigatory functions.'") (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

45.     Plaintiff was obviously prejudiced by Defendants' decision to prosecute him even though they knew he was innocent. Indeed, he spent *four years* wrongfully incarcerated, six months of which was when the government had possession of material, exculpatory evidence that it did not disclose to Parker or his attorney. As a proximate result of Defendants' actions, Plaintiff suffered severe emotional distress, as well as economic damages in an amount according to proof at trial.

46.     The Defendants' decision to prosecute and incarcerate a man they well knew to be innocent was malicious, deliberate, and reckless. It accordingly justifies the award of exemplary damages against the Defendants (in an amount according to proof at trial) to deter them from engaging in similar conduct in the future. Plaintiff is also entitled to attorneys' fees and costs.

## Second Cause of Action

**Tatum-Lee Claim (42 U.S.C. § 1983) Against Paul Zellerbach, Sean Lafferty, Tricia Fransdal, and Jeff Van Wagenen**

47.     Plaintiff realleges and incorporates by reference the foregoing statement of facts and identification of parties.

48.     In *Tatum v. Moody*, the Ninth Circuit held that a due process claim may be based on "detention[] of (1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks." 768 F.3d 806 (9th Cir. 2014).

49.     This holding was a natural application of the reasoning in *Lee v. City of Los Angeles*, in which the Ninth Circuit held that "continued detention after it

Complaint for Violations of Civil and Constitutional Rights

was or should have been known that the detainee was entitled to release" can violate the Fourteenth Amendment. 250 F.3d 668, 683 (9th Cir. 2001) (quotations and citation omitted); *see also id.* ("[T]he loss of liberty caused by an individual's mistaken incarceration 'after the lapse of a certain amount of time' gives rise to a claim under the Due Process Clause of the Fourteenth Amendment.") (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)); *Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993) (a detainee has "a constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release.").

50.    Here, Deputy D.A. Ross acquired recorded jail calls in which Petitioner's former roommate, Willie Womack, confessed to – and laughed about – the murder of Brandon Stevenson. Since this was the crime for which Plaintiff was being held in custody, there can be no doubt that the evidence of another man confessing to committing this crime was highly significant exculpatory evidence that was favorable to Petitioner. Indeed, this evidence confirmed what the prosecutors assigned to the case had always said—that Plaintiff was innocent and entitled to release.

51.    Rather than disclosing that evidence to the Plaintiff, however, Defendant Lafferty, acting on behalf of the County of Riverside and in concert with Defendants Zellerbach, Van Wagenen, and Fransdal, deliberately withheld that conclusively exculpatory evidence from Plaintiff, who did not learn about its existence until October 2020. Plaintiff was also unaware of the assigned prosecutors internal memoranda in which they informed their supervisors that Plaintiff was almost certainly innocent. This withholding of exculpatory evidence during an ongoing detention of unusual length was a violation of Plaintiff's Fourteenth Amendment right to due process.

52.    Because Defendants' decision to withhold the exculpatory jail calls took place before a judicial finding of probable cause, the decision was part of the

Complaint for Violations of Civil and Constitutional Rights

investigatory process and not within the ambit of the traditional functions of an advocate. Defendants accordingly are not entitled to absolute immunity. *See Genzler*, 410 F.3d at 636.

53.   Plaintiff was prejudiced by Defendants' decision to withhold the jail calls that constituted overwhelming proof of his innocence. He languished at least an additional six months behind bars (from September 2013 to March 6, 2014) and did not learn about the exculpatory jail calls until October 2020. As a proximate result of Defendants' actions, Plaintiff suffered severe emotional distress, as well as economic damages in an amount according to proof at trial.

54.   The Defendants' decision to withhold exculpatory evidence from a criminal defendant they knew to be innocent was both deliberate and reckless. It accordingly justifies the award of exemplary damages against the Defendants (in an amount according to proof at trial) to deter them from engaging in similar conduct in the future. Plaintiff is also entitled to attorneys' fees and costs.

### Third Cause of Action

### *Monell* Claim Based on Malicious Prosecution (42 U.S.C § 1983) Against the County of Riverside

55.   Plaintiff realleges and incorporates by reference the foregoing statement of facts and identification of parties.

56.   The County had an unlawful custom, pattern, and practice of maliciously prosecuting criminal defendants without probable cause in violation of the Fourth and Fourteenth Amendments. Additionally, the County ratified the malicious prosecution of Plaintiff in violation of the Fourth and Fourteenth Amendments.

57.   The County had a custom or practice of intimidating and punishing lower-level prosecutors who refused to continue to prosecute criminal defendants against whom charges had been filed once those lower-level prosecutors

Complaint for Violations of Civil and Constitutional Rights

determined that was no probable cause to support the charges. Those lower-level prosecutors were forced to elect between fulfilling their constitutional and ethical obligations (i.e., not prosecuting innocent people and turning over exculpatory evidence to the defense) and keeping their jobs. Defendants acted pursuant to this widespread, longstanding practice or custom when they continued to prosecute Plaintiff without probable cause and continued to prosecute Plaintiff after they knew he was innocent. In maintaining this unlawful practice, the County's employees acted for the purpose of political advantage. This unlawful custom or practice caused the deprivation of Plaintiff's rights by Defendants and was the moving force that caused Plaintiff's injuries.

58.     Here, the malicious prosecution of Plaintiff was ratified by the final policymaker, Defendant Zellerbach, who acted under color of state law and had final policymaking authority from the County of Riverside concerning prosecution of criminal cases in Riverside County. Defendant Zellerbach knew of his employees' decision to persist in the prosecution of Plaintiff who was incarcerated despite knowing he was innocent and deliberately made a choice to approve of his employees' acts. Defendant Zellerbach ratified the actions by his employees of the District Attorney's Office for Riverside County that resulted in the continued prosecution and prolonged incarceration of Plaintiff after they knew there was no probable cause to prosecute Plaintiff, after the District Attorney's Office possessed exculpatory evidence that they did not disclose to Plaintiff, and after the District Attorney's Office knew Plaintiff was innocent. The County thereby deprived Plaintiff of his constitutional rights, and this deprivation was the moving force that caused Plaintiff's injuries.

59.     Plaintiff spent four years wrongfully incarcerated as a proximate result of the County's actions and inactions. He is accordingly entitled to compensation for past and future damages, including severe emotional distress, in an amount to be proven at trial. Plaintiff is also entitled to attorneys' fees and costs.

Complaint for Violations of Civil and Constitutional Rights

## **Fourth Cause of Action**

### *Monell* **Claim Based on** *Tatum-Lee* **Violations (42 U.S.C § 1983) Against the County of Riverside**

60.     Plaintiff realleges and incorporates by reference the foregoing statement of facts and identification of parties.

61.     The County had an unlawful custom, pattern, and practice of withholding exculpatory evidence from defendants, in violation of the Fourteenth Amendment. *See* Oral Argument in *Baca v. Adams*, 777 F.3d 1034 (9th Cir. 2015), *available at* https://www.ca9.uscourts.gov/media/video/?20150108/13-56132/ ("[T]he total silence on this suggests that this is the way it's done. I mean they got caught this time but they're going to keep doing it because they have state judges who are willing to look the other way."). Additionally, the County ratified the withholding of exculpatory evidence from Plaintiff in violation of the Fourteenth Amendment.

62.     The County had a custom or practice of intimidating and punishing lower-level prosecutors who refused to withhold significant exculpatory evidence from criminal defendants whose period of detention is unusually prolonged. Those lower-level prosecutors were forced to elect between fulfilling their constitutional and ethical obligations (i.e., not prosecuting innocent people and turning over exculpatory evidence to the defense) and keeping their jobs. Defendants acted pursuant to this widespread, longstanding practice or custom when they withheld the Womack recordings from Plaintiff even though those recordings were significant exculpatory evidence and Plaintiff had been detained for over 40 months. In maintaining this unlawful practice, the County's employees acted for the purpose of political advantage. This unlawful custom or practice caused the deprivation of Plaintiff's rights by Defendants and was the moving force that caused Plaintiff's injuries.

Complaint for Violations of Civil and Constitutional Rights

63.     Here, the withholding of significant exculpatory evidence from Plaintiff despite his unusually prolonged detention was ratified by the final policymaker, Defendant Zellerbach, who acted under color of state law and had final policymaking authority from the County of Riverside concerning prosecution of criminal cases in Riverside County. Defendant Zellerbach knew of his employees' decision to withhold significant exculpatory evidence from Plaintiff who was serving a prolonged period of detention. Defendant Zellerbach deliberately made a choice to approve of his employees' acts. Defendant Zellerbach ratified the actions by his employees of the District Attorney's Office for Riverside County that resulted in the continued prosecution and prolonged detention of Plaintiff after the District Attorney's Office possessed significant exculpatory evidence that they did not disclose to Plaintiff despite his unusually prolonged detention. The County thereby deprived Plaintiff of his constitutional rights, and this deprivation was the moving force that caused Plaintiff's injuries.

64.     The County facilitated this unlawful custom and practice intimidating and punishing lower-level prosecutors, who were forced to elect between fulfilling their constitutional and ethical obligations (i.e., not prosecuting innocent people and turning over exculpatory evidence to the defense) and keeping their jobs. In maintaining this unlawful practice, the County acted for the purpose of political advantage.

65.     Plaintiff spent four years wrongfully incarcerated as a proximate result of the County's actions and inactions. He is accordingly entitled to compensation for past and future damages, including severe emotional distress, in an amount to be proven at trial. Plaintiff is also entitled to attorneys' fees and costs.

///

///

///

Complaint for Violations of Civil and Constitutional Rights

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Fifth Cause of Action**

**Declaratory Relief**

66.    Plaintiff realleges and incorporates by reference the foregoing statement of facts and identification of parties.

67.    This Court enjoys the discretion to grant declaratory relief "in the interests of preventive justice." *See Travers v. Louden*, 254 Cal. App. 2d 926, 931 (1967). That is, "to declare rights rather than execute them." *Id.* "In giving declaratory relief[,] a court has the powers of a court of equity." *See Los Angeles v. Glendale*, 23 Cal. 2d 68, 81 (1943).

68.    As set forth above, the County of Riverside District Attorney's Office has– for years–engaged in a pattern of prosecutorial misconduct, including: 1) maliciously prosecuting innocent defendants in the interest of political expediency; 2) withholding exculpatory evidence from criminal defendants; and 3) encouraging police officers to obtain coerced confessions. This pattern is so widespread and egregious that the former Chief Judge of the Ninth Circuit Court of Appeals commented on it on the record.

69.    Plaintiff requests that this Court fashion an appropriate injunction to permanently enjoin the D.A.'s Office from engaging in these practices.

**Demand for Jury Trial**

70.    Plaintiff hereby respectfully requests and demands a trial by jury on all causes of action and issues for which a trial by jury is available under the law.

**Prayer for Relief**

71.    Plaintiff prays for judgment against Defendants as follows:

    a.  Compensatory damages, including all special/economic damages and all general/non-economic damages incurred as caused by the Defendants according to proof;

Complaint for Violations of Civil and Constitutional Rights

b.  Declaratory relief

    i.   guaranteeing the commitment of the County to provide sufficient resources to ensure implementation of these reforms; and

    ii.  reporting compliance with these reforms for a period of five years;

c.  For attorneys' fees pursuant to 42 U.S.C. §1983 and §1988;

d.  Interest according to the highest rate provided by law;

e.  For costs of suit incurred; and

f.  For such other and further relief as this Court may deem just and proper.

Respectfully Submitted

Dated: September 29, 2023      /s/ *Kimberly S. Trimble*

Kimberly S. Trimble
Attorney for Plaintiff
Roger Wayne Parker

---

22

Complaint for Violations of Civil and Constitutional Rights