UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 21-1280 JGB (KKx)** | Date | November 21, 2023 |
|----------|---------------------------|------|-------------------|
| Title | ***Roger Wayne Parker v. County of Riverside, et al.*** | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---------------|--------------|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---------------------------------------|---------------------------------------|
| None Present | None Present |

**Proceedings:     Order (1) GRANTING-IN-PART and DENYING-IN-PART Defendants' Motion to Dismiss (Dkt. No. 70); and (2) VACATING the November 27, 2023 Hearing (IN CHAMBERS)**

        Before the Court is Defendants County of Riverside, Tricia Fransdal, Sean Lafferty, Jeffrey Van Wagenen, and Paul E. Zellerbach's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  ("Motion," Dkt. No. 70.) The Court determines this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion.  The Court **VACATES** the November 27, 2023 hearing.

## I.   BACKGROUND

        On July 29, 2021, Plaintiff Roger Wayne Parker ("Plaintiff") filed a complaint against Defendants County of Riverside, Paul E. Zellerbach, Sean Lafferty, Tricia Fransdal, and Jeff Van Wagenen (collectively, "Defendants").  ("Complaint," Dkt. No. 1.)  The Complaint alleged four causes of action: (1) malicious prosecution under 42 U.S.C. § 1983 ("Section 1983"); (2) violation of the Fifth Amendment right to due process and withholding of exculpatory evidence under Section 1983; (3) unconstitutional custom, practice, or policy under Section 1983; and (4) declaratory and injunctive relief.  (See id.)

        On January 19, 2022, Defendants filed a motion for judgment on the pleadings.  ("Motion for Judgment on the Pleadings," Dkt. No. 33.)  On February 23, 2022, the Court granted-in-part

and denied-in-part the Motion for Judgment on the Pleadings. ("Judgment on the Pleadings Order," Dkt. No. 44.) The Court dismissed Plaintiff's claims for malicious prosecution and declaratory and injunctive relief. (See id.)[1] Plaintiff's Brady and Monell claims survived. (Id.)

On March 28, 2022, Defendants filed a motion to certify the Court's Judgment on the Pleadings Order for interlocutory appeal. ("Motion for Interlocutory Appeal," Dkt. No. 47.) On May 5, 2022, the Court granted the Motion for Interlocutory Appeal. (See Dkt. No. 55.) The Ninth Circuit also granted Defendants' petition for permission to appeal. (See Dkt. No. 56.) On June 30, 2022, Defendants appealed the Court's Judgment on the Pleadings Order to the Ninth Circuit. (See Dkt. No. 58.)

On August 15, 2023, the Ninth Circuit reversed the Court's denial of Defendants' Motion for Judgment on the Pleadings as to the Brady claim and remanded the case. ("Ninth Circuit Order," Dkt. No. 63.) The Ninth Circuit held that Plaintiff cannot state a Brady claim because he does not allege that Defendants' nondisclosure would have changed the result of any proceeding in his criminal case. (Id. at 10.) The Ninth Circuit reasoned that "[a] Brady violation requires that the withheld evidence have a reasonable probability of affecting a judicial proceeding, and no such proceeding was affected here." (Id. at 4.) However, the Ninth Circuit explicitly stated that on remand, Plaintiff can seek leave to amend his complaint to assert a different due process claim (i.e., a Tatum–Lee claim). (Id. at 11.) In Tatum v. Moody, the Ninth Circuit held that a defendant can state a due process claim arising out of "continued detention after it was or should have been known that [he] was entitled to release." 768 F.3d 806, 816 (9th Cir. 2014) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 683 (9th Cir. 2001)). On September 6, 2023, the official mandate of the Ninth Circuit issued. (Dkt. No. 65.)

On September 6, 2023, Defendants lodged an amended proposed order for judgment on the pleadings. (Dkt. No. 64.) Plaintiff opposed the Amended Proposed Order, arguing that "it would be premature for this Court to grant judgment on the pleadings to Defendants without allowing Plaintiff the opportunity to seek to amend his complaint." (Dkt. No. 66.) The Court reopened the case and granted Plaintiff leave to amend his Complaint on September 19, 2023. (Dkt. No. 68.)

Plaintiff filed a First Amended Complaint on September 29, 2023. ("FAC," Dkt. No. 69.) The FAC alleges five causes of action: (1) malicious prosecution under Section 1983; (2) a Tatum-Lee claim under Section 1983; (3) unconstitutional custom, practice, or policy under Section 1983 for malicious prosecution; (4) unconstitutional custom, practice, or policy under Section 1983 for Tatum-Lee violations; and (5) declaratory and injunctive relief. (FAC.)

---

[1] In the Judgment on the Pleadings Order, the Court dismissed Plaintiff's malicious prosecution claim "without leave to amend," but also stated that "Mr. Parker's claim may be amended." (Compare Judgment on the Pleadings Order at 6 with id. at 7.) The Court clarifies that Plaintiff's malicious prosecution claim was dismissed *with* leave to amend, in accordance with Federal Rule of Civil Procedure 15. Fed. R. Civ. P. 15(a).

On October 20, 2023, Defendants moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]  (See Motion.)  In support of the Motion, Defendants submitted a request for judicial notice of Christopher Ross' Complaint for Retaliation and Disability Discrimination as against County of Riverside, Paul Zellerbach, Sean Lafferty, David Greenberg, Jeffrey Van Wagenen, and Tricia Fransdal, filed on July 10, 2014 in the Superior Court of California, County of Riverside.  ("Request" Dkt. No. 70-1.)[3]

On October 30, 2023, Plaintiff opposed the Motion.  ("Opposition," Dkt. No. 71.) Defendants replied on November 6, 2023.  ("Reply," Dkt. No. 72.)

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this Motion.  See Am. Fam. Ass'n, Inc. v. City & Cnty. of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).

Plaintiff alleges that he was prosecuted for a murder that the Riverside County District Attorney's Office knew he did not commit.  (FAC at 3-8.)  On March 18, 2010, Brandon Stevenson was murdered in the home of Plaintiff's roommate, Willie Womack.  (Id. ¶ 4.) Plaintiff was not home when the police arrived at the scene and, after returning home, he was detained and questioned by the police.  (Id. ¶ 5.)  Plaintiff, who is developmentally delayed, ultimately confessed to the murder, though he "said he made the whole thing up because they kept pressuring him to say something."  (Id.; "Ex. A," Dkt. No. 69-1.)

The first prosecutor assigned to the case, Deputy D.A. Lisa DiMaria, recognized Plaintiff's confession as a sham because it was coerced and inconsistent with physical evidence. (FAC ¶ 6.)  DiMaria expressed "serious concerns" about Plaintiff's guilt in a March 2010 staff meeting and, on July 22, 2011, wrote a memo to her supervisors requesting authorization to "no

---

[2] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

[3] In a motion to dismiss under Rule 12(b)(6), a court may consider "matters of judicial notice" without converting the motion into a motion for summary judgment.  U.S. v. Ritchie, 342 F.3d 903, 907–08 (9th Cir. 2003).  Proceedings of other courts, including orders and filings, are the proper subject of judicial notice when directly related to the case, though not for the truth of the contents of the underlying documents.  See United States ex. Rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 917 F.2d 244, 248 (9th Cir. 1992) (holding that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) ("'[C]ourt orders and filings are the type of documents that are properly noticed under [Fed. R. Evid. 201(b).]'"); Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Accordingly, the Superior Court complaint is subject to judicial notice and the Court **GRANTS** Defendants' Request.

---

file (i.e., dismiss)" the case after the preliminary hearing.  (Id. ¶ 7.)  Instead of dismissing the case, Defendant Sean Lafferty, who was a supervisory Assistant D.A., removed DiMaria from the case and reassigned it to Deputy D.A. Chris Ross.  (Id. ¶ 8.)  According to Ross, Lafferty and Defendant Tricia Fransdal (another supervisory D.A.) told him that the case was reassigned to him because DiMaria thought Plaintiff was innocent.  (Id. ¶ 9.)

Through memos and conversations from 2011 through 2014, Ross told Defendant Lafferty that he believed Plaintiff was being held without probable cause.  (Id. ¶¶ 10-12.)  Defendants Zellerbach, Lafferty, Van Wagenen, and Fransdal (the "Individual Defendants"), and other supervisory assistant D.A.s refused to dismiss the case.  (Id. ¶ 13.)  Ross also raised his concerns about Plaintiff's guilt to Riverside Superior Court Judge Jack Ryan, suggesting that Judge Ryan could dismiss the case after conducting the preliminary hearing—Judge Ryan told Ross that he would not dismiss the case because he wanted to get reelected.  (Id. ¶ 14.)  Plaintiff was in jail during this entire period.  (Id. ¶ 13.)

In fall 2013, Ross obtained recordings of jail telephone calls where Womack—Plaintiff's former roommate—admitted to the murder.  (Id. ¶ 15.)  Ross promptly informed Defendant Lafferty, who told Ross not to disclose the calls to Plaintiff's attorney and then removed Ross from the case.  (Id. ¶¶ 16-17.)  Approximately six months later, Defendant Fransdal moved to dismiss the case without prejudice due to insufficiency of the evidence.  (Id. ¶ 18.)

Plaintiff was unaware of Womack's recorded confession and of the internal memoranda written by DiMaria and Ross until October 2020.  (Id. ¶ 20.)  On July 21, 2021, Plaintiff filed a Petition to Seal and Destroy Arrest Records pursuant to California Penal Code Section 851.8.  (Id. ¶ 21.)  In that petition, Plaintiff requested relief from the two-year time restriction to file such a petition because he did not learn of the recorded jail calls until October 2020.  (Id.)  Plaintiff's petition was granted during an August 23, 2021 hearing—the judge did not decide whether the recorded confession had ever been turned over to Plaintiff or his criminal defense attorney.  (Id.)

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6)

Under Rule 12(b)(6), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted.  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th

Cir. 1994).  Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted).  Courts also need not accept as true allegations that contradict facts which may be judicially noticed.  See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## B.    Rule 15

Rule 15 provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'"  Eminence Cap., L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Generally, a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citation omitted).

## IV.   DISCUSSION

Plaintiff brings five causes of action.  (See FAC.)  Plaintiff asserts: (1) malicious prosecution under Section 1983; (2) a Tatum-Lee claim under Section 1983; (3) unconstitutional custom, practice, or policy under Section 1983 for malicious prosecution; (4) unconstitutional custom, practice, or policy under Section 1983 for Tatum-Lee violations; and (5) declaratory relief.  (See FAC.)  Defendants move to dismiss all causes of action for failure to state a claim under Rule 12(b)(6).  (See Motion at 2.)

Defendants argues the following: (1) Plaintiff's malicious prosecution claim is time-barred (Count One); (2) Plaintiff's <u>Tatum-Lee</u> claim is time-barred and is pled against improper defendants (Count Two); (3) Plaintiff's <u>Monell</u> claims fail because the malicious prosecution and <u>Tatum-Lee</u> claims fail (Counts Three and Four); and (4) the cause of action for declaratory relief fails as a matter of law (Count Five).  (<u>See</u> Motion.)

## A.    Count One: Malicious Prosecution

Defendants argue that Plaintiff's first claim for malicious prosecution is time-barred. (Motion at 8.)  The Court agrees.

The statute of limitations for a Section 1983 cause of action is borrowed from the forum state's statutes of limitations for personal injury torts, which is two years under California law. <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007); <u>Lukovsky v. City & Cty. of San Francisco</u>, 535 F.3d 1044, 1048 (9th Cir. 2008).  The accrual date of a Section 1983 claim, however, is governed by federal law. <u>See</u> <u>Lukovsky</u>, 535 F.3d at 1048.  Under federal law, the statute of limitation begins to run on the date on which the plaintiff "knows or has reason to know of the injury which is the basis of the action."  <u>Id.</u> (quotations omitted).  In other words, "accrual occurs when the plaintiff has a complete and present cause of action"—"that is, when the plaintiff can file suit and obtain relief."  <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007) (citations and quotations omitted).  A claim for malicious prosecution, in particular, begins accruing when the allegedly deficient criminal case is terminated in favor of the accused.  <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

Here, the charges against Plaintiff were dismissed on March 6, 2014, but Plaintiff did not file his initial Complaint until July 29, 2021.  (Complaint.)  Plaintiff argues, however, that his claim is not time-barred because it was tolled—pursuant to California's delayed discovery rule—until he became aware of the internal memoranda in October 2020.  (Opposition at 14.)

State tolling statutes apply to Section 1983 claims.  <u>Hardin v. Straub</u>, 490 U.S. 536, 543-44 (1989).  California's delayed discovery rule delays the accrual of a cause of action until "the plaintiff discovers, or has reason to discover, the cause of action."  <u>Fox v. Ethicon Endo-Surgery, Inc.</u>, 35 Cal. 4th 797, 807 (2005).  "A plaintiff has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements."  <u>Id.</u> (citations omitted).  These elements refer merely to the "generic elements" of "wrongdoing, causation, and harm"; so applying the discovery rule does not require a "hypertechnical approach."  <u>See</u> <u>id.</u>  Thus, "[r]ather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."  <u>Id.</u>; <u>see</u> <u>S.M. v. Los Angeles Unified Sch. Dist.</u>, 184 Cal. App. 4th 712, 717 (2010).

For the delayed discovery rule to apply, "a plaintiff must plead: (1) the time and manner of discovery <u>and</u> (2) the inability to have made earlier discovery despite reasonable diligence."

<u>Fox</u>, 35 Cal. 4th at 808.  "In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence; conclusory allegations will not withstand demurrer."  <u>Id.</u>

This Court previously declined to apply the delayed discovery rule to Plaintiff's malicious prosecution claim.  (Judgment on the Pleadings Order at 5.)  Plaintiff originally argued for the application of the delayed discovery rule because he was unaware of Womack's recorded confession until October 2020.  (<u>Id.</u>)  Now, Plaintiff's FAC adds that he was also unaware of the internal memoranda until October 2020, and Plaintiff argues that this discovery put Plaintiff "on notice for the first time that there was wrongdoing by the prosecutors."  (Opposition at 15.)

But the addition of the internal memoranda allegation does not cure Plaintiff's statute of limitations issue.  As this Court previously wrote, "Mr. Parker also alleges that he was not home when the murder occurred on March 18, 2010; that he was pressured to falsely confess to the murder that same day; and that his criminal case was dismissed due to insufficiency of the evidence."  (Judgment on the Pleadings Order at 5.)  When his criminal case was dismissed, Plaintiff "[knew] or ha[d] reason to know of the injury which is the basis of the action," precluding application of the delayed discovery rule.  See <u>Lukovsky</u>, 535 F.3d at 1048; see also <u>Cherry v. Tyler</u>, 2019 WL 1060045, at *13 (E.D. Cal. Mar. 6, 2019) (finding that the delayed discovery rule did not apply to a claim for false arrest because "Plaintiff would have known at the moment of arrest that it was wrongful, because Plaintiff alleges that [the officer] lied about the events at the football game to suborn the arrest") (citations omitted).

The discovery of the internal memoranda is no different than the discovery of the recorded confession—both go to the strength of Plaintiff's claim, not to his inquiry notice of it. (Judgment on the Pleadings Order at 5-6.)  And though the FAC now adds allegations that Defendants took certain actions to conceal the memoranda and confession, it is clear that Plaintiff was on notice of his claim before he knew of the memoranda or confession.  See <u>Cherry</u>, 2019 WL 1060045, at *13 ("The discovery of the te[x]t messages was not the first notice to Plaintiff of any injury . . . Plaintiff pleads no facts to explain why he was not on inquiry notice at the time of the false arrest.").  Plaintiff does not provide any reasoning as to why the internal memoranda, versus the recorded confession, would change the Court's delayed discovery analysis.  (See Opposition.)

Plaintiff next argues in the alternative that even if the Court finds his "traditional" malicious prosecution theory of liability is untimely, the Court should consider Plaintiff's new "continued" malicious prosecution theory of liability.  (Opposition at 15.)  This part of the malicious prosecution claim "is based on the continuation of the prosecution <u>after</u> obtaining Womack's recorded confession and withholding that exculpatory evidence."  (<u>Id.</u> at 17.)  Plaintiff asserts that "the core factual basis for this type of claim is the prosecution's discovery of information—after charges are filed—that negates probable cause."  (<u>Id.</u> at 18.)  Plaintiff points to a Sixth Circuit case in which this "continued" malicious prosecution theory was applied in a Section 1983 context.  <u>Jones v. Clark County</u>, 959 F.3d 748, 759-61 (6th Cir. 2020) ("This Court has also held that a malicious prosecution claim can involve 'continued detention' without probable cause".).  There, the court found a viable claim of malicious prosecution where: (1)

there was probable cause at the time of the arrest and when charges were filed; (2) later forensic computer analysis produced exculpatory evidence that dissipated probable cause; and (3) the prosecution continued for another 11 months before the case was dismissed.  Id.

In essence, Plaintiff argues that discovery of the recorded confession and memoranda did not just strengthen his "traditional" malicious prosecution case but revealed a separate cause of action entirely— "continued" malicious prosecution after "Defendants obtained and withheld exculpatory evidence that erased any remaining probable cause," of which Plaintiff had no inquiry notice until the recordings and memoranda were uncovered.  (See Opposition at 18.)  But Plaintiff's creative argument does not change the well-established rules governing the accrual of a malicious prosecution claim.  The action still accrues when the case is terminated in favor of the accused.  See Heck v. Humphrey, 512 U.S. at 484.

And, again, Plaintiff has not shown that the delayed discovery rule should apply to his "continued" malicious prosecution claim.  "[T]he discovery of a new cause of action resulting from the same harm does not trigger the discovery rule."  Shamsnia v. Anaco, 2015 WL 12672091, at *3 (C.D. Cal. 2015).  Plaintiff still bears the burden of showing that he did not "have reason to at least suspect that a type of wrongdoing ha[d] injured [him]."  Fox, 35 Cal. 4th at 807.  As discussed above, Plaintiff knew at the time of dismissal that prosecutors had dropped the case due to "insufficiency of the evidence."  (Judgment on the Pleadings Order at 5.)  He also knew that he was not present at the time of the murder, or at the scene of the murder when the police arrived.  Id.  Regardless of when probable cause technically dissipated, the foregoing facts show that Plaintiff was on inquiry notice that prosecutors lacked evidence against him at the time his case was dismissed.  See Lukovsky, 535 F.3d at 1048 (holding a cause of action accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action").

The delayed discovery rule therefore does not apply to either of Plaintiff's alleged malicious prosecution claims, and the last date to timely file this claim was on March 6, 2016.  Because Plaintiff's claim is time-barred, the Court finds that any amendment to the FAC would be futile.  Accordingly, the Court **GRANTS** the Motion as to the malicious prosecution claim (Count One) and **DISMISSES** the claim **WITHOUT LEAVE TO AMEND**.

**B.     Count Two: Tatum-Lee Claim**

Defendants argue first that Plaintiff's Tatum-Lee claim is time-barred and, second, that a Tatum-Lee claim cannot be brought against prosecutors.  The Court addresses these arguments in turn.

First, a Tatum-Lee claim is based on a violation of the Due Process Clause of the Fourteenth Amendment.  Tatum v. Moody, 768 F.3d 806, 816 (9th Cir. 2014) ("Where . . . officers . . . fail to disclose potentially dispositive exculpatory evidence to the prosecutors, leading to the lengthy detention of an innocent man, they violate the due process guarantees of the Fourteenth Amendment.").  "Continued detention after it was or should have been known that the detainee was entitled to release can violate the Fourteenth Amendment."  Id. (quoting Lee v.

City of Los Angeles, 250 F.3d 668, 683-84 (9th Cir. 2001)).  Tatum-Lee claims are "restricted to detentions of (1) unusual length, (2) caused by the investigating officers' failure to disclose highly significant exculpatory evidence to prosecutors, and (3) due to conduct that is culpable in that the officers understood the risks to the plaintiff's rights from withholding the information or were completely indifferent to those risks."  Tatum, 768 F.3d at 819-20.

Plaintiff asserts that Individual Defendants withheld exculpatory evidence (Womack's recorded confession) from Plaintiff and his lawyer, during his ongoing detention of unusual length.  (FAC ¶¶ 50-51, 53.)  Defendants argue that Plaintiff's Tatum-Lee claim is also time-barred because it is analogous to his malicious prosecution claim, and because he had inquiry notice of the claim when charges were dismissed.  (Motion at 7-8.)

The Court disagrees.  Like a malicious prosecution claim, the statute of limitations for a Tatum-Lee claim under Section 1983 is borrowed from California's statute of limitations for personal injury torts, which is two years.  See Wallace v. Kato, 549 U.S. 384, 387 (2007).  But, here, the delayed discovery rule applies to toll the statute of limitations.  Plaintiff has successfully pled that he did not have "reason to at least suspect a factual basis for [the] elements" of a Tatum-Lee claim.  See Fox, 35 Cal. 4th at 807.  The crux of a Tatum-Lee claim is the failure to disclose exculpatory evidence, leading to lengthy detention.  See Tatum, 768 F.3d at 816, 819-20 (stating that an element of a Tatum-Lee claim is a "failure to disclose highly significant exculpatory evidence").  Unlike the malicious prosecution claim, for which Plaintiff had reason to suspect the prosecutors lacked probable cause, Plaintiff had no reason to suspect the prosecutors had access to—let alone withheld—exculpatory evidence until the fall of 2020.  In fact, Plaintiff alleges that the Individual Defendants took steps to conceal the exculpatory recorded confession by ordering Ross not to disclose the tape and removing Ross from the case.  (FAC ¶¶ 16-17.)  As such, Plaintiff has sufficiently pled the "the inability to have made earlier discovery" of the tapes.  See Fox, 35 Cal. 4th at 808.

To hold that the statute of limitations accrued upon the dismissal of charges would create an impossible obstacle for future plaintiffs.  Such a result would mean that all plaintiffs who have experienced a relatively lengthy detention are on inquiry notice of a Tatum-Lee violation as soon as charges are dismissed.  Here, all Plaintiff alleges he knew upon his release was that he was not at home at the time of the murder, that his confession was coerced, and that the charges were dismissed for lack of evidence.  Plaintiff adds, and Defendants do not dispute, that criminal charges were never filed against Womack even after Plaintiff's release—as such, Plaintiff could not have possibly suspected that Womack confessed.  (Opposition at 13; Reply.)  Defendants ask the Court to find, under these circumstances, that Plaintiff, a developmentally delayed non-lawyer, should have somehow intuited that the prosecutors "failed to disclose highly significant exculpatory evidence" and should have then conducted an inquiry to uncover that theoretical, exculpatory evidence.  See Tatum, 768 F.3d at 819-20 (detailing the elements of a Tatum-Lee claim); Motion at 7-8 (arguing that Plaintiff had inquiry notice of a Tatum-Lee claim upon his release and that he should have discovered the exculpatory evidence through reasonable diligence).  Defendants' proposed holding would also incentivize officers and prosecutors to conceal the existence of exculpatory evidence until after the statute of limitations on a Tatum-

Lee claim has run, two years after dismissal.  The Court declines to reach such a conclusion.

Accordingly, the Court finds that Plaintiff's Tatum-Lee claim did not accrue until October 2020, when Plaintiff discovered the recorded confession.  The last date to timely file this claim was in October 2022, so Plaintiff's Tatum-Lee claim is not time-barred.

Second, Defendants argue that a Tatum-Lee claim cannot be brought against prosecutors. Again, the Court disagrees.  The basis of Defendants' argument is that the language of Tatum indicates the claims can be brought against "investigating officers" for failure to disclose exculpatory evidence "to prosecutors."  Tatum, 768 F.3d at 806.  But Tatum emphasizes repeatedly that the harm at issue was the "prolonged detention" the detainee suffered after exculpatory evidence was withheld, with deliberate indifference to the detainee's rights.  Id. at 814, 816.  The prosecutors did not suffer harm from the failure to disclose evidence—the wrongly detained plaintiff did.

It is nonsensical to hold that because prosecutors and not investigating officers allegedly withheld exculpatory evidence, Plaintiff cannot state a claim.  The right contemplated by Tatum and Lee is a detainee's "constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release," not a prosecutor's right to information.  Lee, 250 F.3d at 683.  Plaintiff's alleged harm mirrors the situation discussed in Tatum.  There, officers concealed "facts highly material to . . . the decision whether to . . . continue prosecuting" the detainee.  Tatum, 768 F.3d at 817.  The lack of disclosure led to a "two-year period [the detainee] remained in pretrial detention."  Id. at 819.  Like in Tatum, Plaintiff alleges that the uncovered exculpatory evidence should have led to a dismissal of charges—though it was uncovered by an endeavoring prosecutor.  (FAC ¶ 15.)  Plaintiff, like the detainee in Tatum, remained in custody for another six months (following nearly four years of pretrial detention) after prosecutors failed to disclose the evidence to the defense.  (Id. ¶¶ 16-18). The prosecutors here, as attorneys experienced in criminal law, were in fact better positioned than police officers to "underst[and] the risks to the plaintiff's rights from withholding the information"—namely, that Plaintiff would remain unjustly detained.  See Tatum, 768 F.3d at 820.

Plaintiff alleges the same harm and violation of constitutional rights contemplated by Tatum, and sufficiently alleges that his prolonged detention was caused by the withholding of exculpatory evidence with deliberate indifference to his rights.  As the Court understands, these are the key elements of a Tatum-Lee claim.  See id. at 809, 816; Lee, 250 F.3d at 683-84. Accordingly, the Court finds that Plaintiff has sufficiently pled a Tatum-Lee violation and **DENIES** the Motion as to the Tatum-Lee claim.

## C. Count Three: Monell Claim—Malicious Prosecution

Plaintiff's Monell claim for malicious prosecution against Defendant County of Riverside is contingent on the underlying constitutional violation of Count One.  The Court has dismissed Count One for malicious prosecution under Section 1983 without leave to amend.  Accordingly,

the Court **GRANTS** the Motion as to the <u>Monell</u> claim for malicious prosecution and **DISMISSES** the claim **WITHOUT LEAVE TO AMEND**.

**D.    Count Four: <u>Monell</u> Claim—<u>Tatum-Lee</u>**

Defendants seek to dismiss Plaintiff's <u>Monell</u> claim for <u>Tatum-Lee</u> violations. Defendants' sole argument is that because the <u>Monell</u> claim is contingent on the underlying constitutional violation of Count Two, the <u>Monell</u> claim cannot survive if Count Two fails. However, the Court has already denied Defendants' Motion as to Count Two and the underlying <u>Tatum-Lee</u> claim survives—therefore, the corresponding <u>Monell</u> claim survives. Accordingly, the Court **DENIES** the Motion as to the <u>Monell</u> claim for <u>Tatum-Lee</u> violations.

**E.    Count Five: Declaratory Relief**

Defendants seek to dismiss Plaintiff's fifth claim for declaratory relief, which asks the Court to "fashion an appropriate injunction to permanently enjoin the D.A.'s Office from engaging in these practices." (FAC ¶ 69.) Defendants contend that, even if Plaintiff's other claims survive, this claim fails as a matter of law because Plaintiff has failed to plead a significant threat of irreparable injury. (Motion at 11-12.)

In order to seek declaratory relief, Plaintiff must "show that he has sustained or is immediately in danger of sustaining some direct injury . . . and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983). In <u>Lyons</u>, the Supreme Court denied injunctive relief where the plaintiff did not sufficiently demonstrate a threat of future injury. <u>Id.</u> at 108. In that case, which dealt with strangleholds during police traffic stops, the plaintiff made no allegation that "strangleholds are applied by the Los Angeles police to every citizen who is stopped or arrested regardless of the conduct of the person stopped." <u>Id.</u> The Court further found that "it is surely no more than speculation to assert that either Lyons himself will again be involved in one of those unfortunate instances, or that he will be arrested in the future and provoke the use of a chokehold by resisting arrest." <u>Id.</u> at 108.

Here, Plaintiff has similarly failed to allege that the County of Riverside withholds exculpatory evidence in every case where it is available. And though Plaintiff argues he is "at risk of suffering a wrongful future prosecution by Defendants given their unconstitutional patterns and practices," it is no more than speculation to assert that Plaintiff himself will again be wrongfully prosecuted, or even arrested. (Opposition at 25.) Moreover, in the years that have elapsed between the filing of the original Complaint and the FAC, there have been no additional allegations of further encounters between Plaintiff and the Riverside District Attorneys—let alone allegations of prosecutorial misconduct. <u>See Lyons</u>, 461 U.S. at 108 ("We note that five months have elapsed between October 6, 1976, and the filing of the complaint, yet there was no allegation of future unfortunate encounters between Lyons and the police.").

The Court finds that Plaintiff has failed to state a claim for declaratory relief. Accordingly, the Court **GRANTS** the Motion as to the declaratory relief claim and **DISMISSES** the claim **WITH LEAVE TO AMEND**.

## V.   CONCLUSION

For the above reasons, the Court **ORDERS** as follows:

1. Defendants' Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

2. Counts One (malicious prosecution under Section 1983) and Three (<u>Monell</u> claim for malicious prosecution) are **DISMISSED WITHOUT LEAVE TO AMEND**.

3. Count Five (declaratory relief) is **DISMISSED WITH LEAVE TO AMEND**.

4. Plaintiffs may file an amended complaint no later than **December 1, 2023**.

5. The Court **VACATES** the November 27, 2023 hearing.

**IT IS SO ORDERED.**