Kimberly S. Trimble (288682)
Sarah R. Weinman (314382)
SINGLETON SCHREIBER, LLP
591 Camino De La Reina, Ste. 1025
San Diego, CA 92108
Tel: (619) 810-9430
ktrimble@singletonschreiber.com
sweinman@singletonschreiber.com

Wilbur O. Colom (MS 6403) (*Pro Hac Vice*)
COLOM AND BRANT LLC
Special Counsel to the President of the NAACP
P.O. Box 866
Columbus, MS 39703
Tel: (662) 327-0903
wil@colom.com

Attorneys for Plaintiff Roger Wayne Parker

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Roger Wayne Parker,<br><br>        Plaintiff,<br><br>    v.<br><br>County of Riverside; Paul E. Zellerbach, individually and in his official capacity as County of Riverside District Attorney; Sean Lafferty, individually and in his official capacity; Tricia Fransdal, individually and in her official capacity; and Jeff Van Wagenen, individually and in his official capacity,<br><br>        Defendants. | Case No.: 5:21-cv-01280-JGB-DTB<br><br>**Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings**<br><br>Date:            August 26, 2024<br>Time:            9:00 a.m.<br>Courtroom:    1 [Riverside]<br>Judge:          Hon. Jesus G. Bernal<br><br>Complaint filed:  July 29, 2021<br>Trial:            None set |

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................ii

Introduction .............................................................................................................1

Factual Background ..................................................................................................2

Legal Standard .........................................................................................................3

Argument..................................................................................................................4

    I. ..... Defendant County of Riverside acted on behalf of the county when it failed to establish general administrative policy and training on the duty to disclose exculpatory evidence and established a custom or practice of intimidating and punishing line attorneys who refused to withhold exculpatory evidence........................................4

    II...Individual defendants—Zellerbach, Lafferty, Fransdal, and Van Wagenen—not entitled to the defense of absolute or qualified immunity. .................................12

        A.    The individual Defendants are not entitled to absolute immunity.    12

        B.    The individual Defendants are not entitled to qualified immunity.    13

    III. ..... This Court has previously rejected Defendants arguments that Parker cannot assert a *Tatum-Lee* claim against prosecutors, and this Court should reject these recycled arguments here. ...............................................................................14

    IV.    Parker respectfully requests leave to amend. .............................................15

Conclusion ............................................................................................................17

Plaintiff's Opposition to Defendants'                Case No: 21cv1280
Motion for Judgment on the Pleadings

# TABLE OF AUTHORITIES

## Cases

*Altamirano v. Cnty. of Pima*,
  2019 WL 3457696, at *6 (D. Ariz. July 31, 2019), *order clarified,*  2020 WL 601663
  (D. Ariz. Feb. 7, 2020)...................................................................................................11

*Baker v. McCollan*,
  443 U.S. 137 (1979) ........................................................................................................14

*Bellamy v. City of New York*,
  914 F.3d 727 (2d Cir. 2019) .....................................................................................10, 16

*Botello v. Gammick*,
  413 F.3d 971 (9th Cir. 2005) ............................................................................................5

*Briggs v. Montgomery*,
  2019 WL 2515950, at *19 (D. Ariz. June 18, 2019)........................................................11

*Broam v. Bogan*,
  320 F.3d 1023 (9th Cir. 2003) ........................................................................................13

*Buckley v. Fitzsimmons*,
  509 U.S. 259 (1993) ........................................................................................................12

*Burns v. Reed*,
  500 U.S. 478 (1991) ..................................................................................................12, 13

*Carnevale v. DiGiovanni*,
No. 2:22-CV-341, 2022 WL 4367333, at *3 (W.D. Pa. Sept. 21, 2022) ........................12

*Carvalho v. Equifax Info. Servs., LLC*,
  629 F.3d 876 (9th Cir. 2010) ..........................................................................................16

*Cotton v. Cnty. of San Bernardino*,
  2016 WL 7187442, at *12 (C.D. Cal. Nov. 9, 2016) .......................................................10

*Doleman v. Meiji Mut. Life Ins. Co.* ,
  727 F.2d 1480 (9th Cir. 1984)............................................................................................3

Plaintiff's Opposition to Defendants'                    Case No: 21cv1280
Motion for Judgment on the Pleadings

*Fletcher v. Kalina*,
   93 F.3d 653 (9th Cir. 1996) ................................................................12

*Friedman v. Boucher*,
580 F.3d 847 (9th Cir. 2009) ...............................................................13

*Gibson v. County of Washoe*,
   290 F.3d 1175 (9th Cir. 2002) ............................................................16

*Goldstein v. City of Long Beach*,
   715 F.3d 750 (9th Cir. 2013) .......................................................*passim*

*Gregg v. Dep't of Pub. Safety*,
   870 F.3d 883 (9th Cir. 2017) ..............................................................16

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) ..............................................................3

*Hanline v. Cnty. of Ventura*,
2017 WL 11682912, at *11 (C.D. Cal. Aug. 7, 2017) ...................10

*Houston v. Partee*,
   978 F.2d 362 (7th Cir. 1992) .........................................................12, 13

*Imbler v. Pachtman*,
   U.S. 409 (1976) ....................................................................................12

*Jackson v. Barnes*,
   749 F.3d 755 (9th Cir. 2014) ..............................................................10

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) .......................................................4, 5, 15

*Long v. County of Los Angeles*,
   442 F.3d 1178 (9th Cir. 2006) ............................................................16

*Lund v. Cowan*,
   5 F.4th 964 (9th Cir. 2021) .................................................................10

*McMillian v. Monroe Cnty.*,
   520 U.S. 781 (1997) ...................................................................1, 5, 6, 7

iii

Plaintiff's Opposition to Defendants'          Case No: 21cv1280
Motion for Judgment on the Pleadings

*Milke v. City of Phoenix,*
2016 WL 5339693, at *16–18 (D. Ariz. Jan. 8, 2016)...................................11

*Monell v Dep't of Soc. Servs. ,*
436 U.S. 658 (1978) ..............................................................................1, 4

*Myers v. Cnty. of Orange,*
157 F.3 66 (2d Cir. 1998) .......................................................................11

*Owens v. Kaiser Found. Health Plan, Inc.,*
244 F.3d 708 (9th Cir. 2001) ...................................................................3

*Peterson v. Tomaselli,*
469 F. Supp. 2d 146 (S.D.N.Y. 2007) .......................................................11

*Pitts v. County of Kern,*
949 P.2d 920 (1998) ..........................................................................9, 10

*Puckett v. Cnty. of Sacramento,*
2023 WL 2432919, at *9 (E.D. Cal. Mar. 9, 2023)......................................10

*Sialoi v. City of San Diego,*
823 F.3d 1223 (9th Cir. 2016) .................................................................13

*Singh v. Bunch,*
2017 WL 117857, at *10 (E.D. Cal. Jan. 11, 2017)......................................11

*Tatum v. Moody,*
768 F.3d 806 (9th Cir. 2014)...............................................1, 4, 5, 12, 15

*Walker v. City of New York,*
974 F.2d 293 (2d Cir.1992) .....................................................................10

*Webb v. Sloan,*
330 F.3d 1158 (9th Cir.2003) ...................................................................4

*Weiner v. San Diego Cnty.,*
210 F.3d 1025 (9th Cir. 2000) .............................................................4, 5, 9

iv

*Williams Decl. v. Fedor*,
69 F.Supp.2d 649 (M.D. Penn. 1999) ........................................................................11

**Statutes**

Cal. Const. art. V, § 13 ..............................................................................................7, 8

Cal. Gov't Code § 24000 ............................................................................................7, 8

Cal. Gov't Code § 24303 ............................................................................................7, 8

Cal. Gov't Code § 24009 ............................................................................................7, 8

Cal. Gov't Code § 3073 ..............................................................................................7, 8

Fed. R. Civ. P. 15(a) .....................................................................................................16

**Other Authorities**

C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969) ........3

Plaintiff's Opposition to Defendants'                    Case No: 21cv1280
Motion for Judgment on the Pleadings

# INTRODUCTION

In *Goldstein v. City of Long Beach*, the Ninth Circuit held that a "district attorney represents the county when establishing administrative policies and training related to the general operation of the district attorney's office." 715 F.3d 750, 759–60 (9th Cir. 2013) (applying factors set forth in *McMillian v. Monroe Cnty.*, 520 U.S. 781(1997)). As such, the district attorney may be liable under 42 U.S.C. § 1983 for violating an individual's constitutional rights. *See id*; *see also Monell v Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978) (requiring policymaker to act in a local, not state, capacity to be held liable).

Here, the Riverside County District Attorney's Office represented the county when it established administrative protocols and personnel practices that frustrated line attorneys' ability to comply with their constitutional obligation to disclose "compelling exculpatory evidence." *Tatum v. Moody*, 768 F.3d 806, 816 (9th Cir. 2014). These administrative failures led to an office culture of "total silence" on withholding exculpatory evidence. *See* First Amended Complaint ("FAC") at ¶ 62 (citing Oral Argument, *Baca v. Adams*, 777 F.3d 1034 (9th Cir. 2015), *available at* http://www.ca9.uscourts.gov/media/video/:20150108/13-5613/). It led Chief Judge Kozinski to predict the Riverside District Attorney is "going to keep doing it because they have state judges who are willing to look the other way." *Id*. And that's exactly what happened to Plaintiff Roger Parker, causing him to languish in detention despite known evidence *of his innocence*.

The District Attorney's administrative failures are like the administrative functions at issue in *Goldstein*. Thus, under *Goldstein*, Defendants were acting on behalf of the county, not the state.  As a result, Defendants are subject to liability under *Monell*.

Defendants' motion for judgment on the pleadings contends that Defendants acted on behalf of the state, but never discusses *Goldstein*'s analysis or applies the *McMillian* factors. Defendants' failure to engage with the controlling precedent reveals the weakness

Plaintiff's Opposition to Defendants'                          Case No: 21cv1280
Motion for Judgment on the Pleadings

of their argument. This Court should therefore deny Defendants' motion for judgment on the pleadings.

**FACTUAL BACKGROUND**

The following facts are from this Court's order granting in part and denying in part Defendants' motion to dismiss. *See* Order, Dkt. No. 74, at 3–4 (Nov. 21, 2023).

Parker was prosecuted for a murder that the Riverside County District Attorney's Office knew he did not commit. FAC at ¶¶ 3–8. On March 18, 2010, Brandon Stevenson was murdered in the home of Willie Womack, Parker's roommate. *Id*. ¶ 4. Parker was not home when the police arrived at the scene. *Id.* at ¶ 5. After returning home, he was detained and questioned by the police. *Id*. ¶ 5. Parker, who is developmentally delayed, eventually confessed to the murder, though he "said he made the whole thing up because they kept pressuring him to say something." *Id*.; "Ex. A," Dkt. No. 69-1.

The first prosecutor assigned to the case, Deputy District Attorney Lisa DiMaria, recognized Parker's confession as a sham as it was coerced and inconsistent with the physical evidence. FAC ¶ 6. DiMaria expressed "serious concerns" about Parker's guilt in a staff meeting in March 2010. *Id.* at ¶ 7. On July 22, 2011, DiMaria wrote a memo to her supervisors requesting authorization to "no file (i.e., dismiss)" the case after the preliminary hearing. *Id*. Instead of dismissing the case, Defendant Sean Lafferty, a supervising assistant district attorney, removed DiMaria from the case and reassigned it to Deputy District Attorney Chris Ross. *Id*. ¶ 8. According to Ross, Lafferty and another supervising district attorney, Defendant Tricia Fransdal, told him that the case was reassigned to him because DiMaria thought Plaintiff was innocent. *Id*. ¶ 9.

Between 2011 and 2014, Ross told Defendant Lafferty via memos and conversations that he believed Parker was being held without probable cause. FAC at ¶¶ 10-12. Defendants Zellerbach, Lafferty, Van Wagenen, and Fransdal ("individual Defendants"), and other supervisory assistant district attorneys refused to dismiss the case. *Id*. ¶ 13. Ross also raised his concerns about Parker's guilt to Riverside Superior Court Judge Jack Ryan and suggested that Judge Ryan could dismiss the case after

2

conducting the preliminary hearing. *Id.* at ¶ 14. Judge Ryan told Ross that he would not dismiss Parker's case because he wanted to get reelected. *Id.* ¶ 14. Parker was in jail throughout this period. *Id.* ¶ 13.

In the fall off 2013, Ross obtained jail phone call recordings in which Womack, Parker's former roommate, admitted to the murder. FAC at ¶ 15. Ross promptly informed Defendant Lafferty, who told Ross not to disclose the calls to Parker's attorney; Defendant Lafferty then removed Ross from the case. *Id.* at ¶¶ 16–17. About six months later, Defendant Fransdal moved to dismiss the case without prejudice due to insufficiency of the evidence. *Id.* ¶ 18.

Parker was not aware of Womack's recorded confession or of the internal memoranda written by DiMaria and Ross until October 2020. FAC at ¶ 20. On July 21, 2021, Parker filed a petition to seal and destroy arrest records pursuant to California Penal Code Section 851.8. *Id.* at ¶ 21. In that petition, Parker requested relief from the two-year time restriction to file such a petition because he did not learn of the recorded jail calls until October 2020. *Id.* The court granted Parker's petition during an August 23, 2021 hearing without deciding whether the recorded confession had ever been turned over to Plaintiff or his criminal defense attorney. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) permits judgment on the pleadings only if "taking all the allegations in the pleadings as true," *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quotation and citation omitted), "while the allegations of the moving party which have been denied are assumed to be false," *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "Generally, district courts have been unwilling to grant a Rule 12(c) dismissal 'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) (quoting C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1368, at 690 (1969).

3

## ARGUMENT

A local government may be liable under 42 U.S.C. § 1983 for constitutional torts committed by its officials pursuant to municipal policy, practice, or custom. *See Weiner v. San Diego Cnty.*, 210 F.3d 1025, 1028 (9th Cir. 2000) (citing *Monell v Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Alternatively, liability may attach "even for an isolated constitutional violation . . . when the person causing the violation has final policy making authority." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003). Under this Court's previous ruling, the underlying constitutional violation—known as a *Tatum-Lee* claim—arises when a prosecutor fails to turn over compelling exculpatory evidence and it results in "prolonged detention."  Order, Dkt. No. 74, at 10 (Nov. 21, 2023) (citing *Tatum v. Moody*, 768 F.3d 806, 816 (9th Cir. 2014); *Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)).

As set forth below, the County is liable under *Monell* for a *Tatum-Lee* violation because it was acting in the capacity of a county, not state, when it established administrative protocols and oversight that frustrated its deputy district attorneys' ability to comply with their constitutional obligation to disclose "compelling exculpatory evidence." *Tatum*, 768 F.3d at 818. And the individual Defendants should not receive absolute or qualified immunity for a *Tatum-Lee* violation because no reasonable prosecutor would have suppressed the compelling evidence of the true perpetrator's confession *and* permitted Parker's prolonged detention to continue.  This is the egregious type of misconduct that should trigger accountability, not immunity.

This Court should deny Defendants' motion for judgment on the pleadings.

**I.** **Defendant County of Riverside acted on behalf of the county when it failed to establish general administrative policy and training on the duty to disclose exculpatory evidence and established a custom or practice of intimidating and punishing line attorneys who refused to withhold exculpatory evidence.**

This Court's previous Order identified the relevant underlying constitutional violation in the present case: "The crux of a *Tatum-Lee* claim is the failure to disclose

4

exculpatory evidence, leading to lengthy detention." Order, Dkt. No. 74, at 9 (citing *Tatum*, 768 F.3d at 816; *see id.* at 10 ("The right contemplated by *Tatum* and *Lee* is a detainee's 'constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release,' not a prosecutor's right to information.") (quoting *Lee*, 250 F.3d at 683).

Here, as in *Tatum*, Parker alleges his prolonged detention was caused by Defendants' decision to withhold exculpatory evidence from him with deliberate indifference to his constitutional rights. Accordingly, this Court recognized that "Plaintiff alleges the same harm and violation of constitutional rights contemplated by *Tatum*, and sufficiently alleges that his prolonged detention was caused by the withholding of exculpatory evidence with deliberate indifference to his rights. As the Court understands, these are the key elements of a *Tatum-Lee* claim. *See id.* at 809, 816; *Lee*, 250 F.3d at 683-84." Order, Dkt. No. 74, at 10. This Court therefore previously ruled that Parker "has sufficiently pled a Tatum-Lee violation" and denied Defendants' motion to dismiss his *Tatum-Lee* claim. *Id.*

Proving *Monell* liability under these circumstances requires two additional showings. First, a plaintiff must show that the official had final policymaking authority over the action at issue. *See Weiner*, 210 F.3d at 1028. Second, a plaintiff must show that the official was the policymaker for the *local* (not state) governing body for purposes of the particular act. *Id.* (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997)); *see also Goldstein v. City of Long Beach*, 715 F.3d 750, 753 (9th Cir. 2013); *Botello v. Gammick*, 413 F.3d 971, 978–79 (9th Cir. 2005).

Defendants do not challenge the first element. Rather, their sole argument against *Monell* liability is that District Attorney Zellerbach was acting on behalf of the state, rather than the county, in exercising this policymaking authority in this case. Def. Mot. at 9–12. But District Attorney Zellerbach acted for the county, not the state, in failing to establish policies and training on disclosing exculpatory evidence and in creating a

Plaintiff's Opposition to Defendants'                    Case No: 21cv1280
Motion for Judgment on the Pleadings

custom or practice of intimidating and punishing line attorneys who sought to disclose such evidence. This Court should therefore deny Defendants' motion.

The Ninth Circuit's decision in *Goldstein* is instructive. In *Goldstein*, the plaintiff was convicted of murder based "almost solely" on the testimony of a jailhouse informant. 715 F.3d at 752. The district attorney did not inform Goldstein that it had used the same jailhouse informant as a witness in other cases and had given him a benefit for testifying against Goldstein. *Id.* at 751. Goldstein sued the district attorney under § 1983, contending that it violated his constitutional rights by failing to set an administrative policy or train deputy district attorneys on disclosing information about jailhouse informants. *Id.* at 752. Like Defendants here, the district attorneys in *Goldstein* argued that "the district attorney acts on behalf of the state, rather than the county, in setting policy related to jailhouse informants . . . ." *Goldstein*, 715 F.3d at 753 (internal quotation marks and brackets omitted). The district court "reluctantly" agreed and dismissed the action. *Id.*

The Ninth Circuit reversed. *See Goldstein*, 715 F.3d at 751. It held that whether a district attorney acts in a local or state capacity turns on the three so-called *McMillian* factors: (1) the district attorney's place within the structure of government; (2) the constitutional and statutory provisions relevant to the power and the duties of district attorneys within their counties; and (3) the control that the California Attorney General and county boards of supervisors exercise over district attorneys. *Id.* at 753–54 (discussing *McMillian*, 520 U.S. at 784–86).

Applying these factors, the Ninth Circuit determined that the Los Angeles District Attorney was acting on behalf of the county, not the state, in "establishing administrative policies and training related to the general operation of the district attorney's office," including policy on disclosing information about jailhouse informants. *Goldstein*, 715 F.3d at 759; *see also id.* at 754–56.

Regarding the first *McMillian* factor (the district attorney's place within the structure of government), the court held that district attorneys operate at the county level

6

within the government structure. *Goldstein*, 715 F.3d at 755. Here, the court recognized that the California Government Code identifies district attorneys as county officers, authorizes funding to district attorneys as an expression of county powers, provides that district attorneys are to be elected by county voters, and requires district attorneys to be registered to vote in the county in which they are elected. *Id.* (citing Cal. Gov't Code §§ 3703, 24000, 24001, 24009).

The court in *Goldstein* considered the second factor (constitutional and statutory delegation of district-attorney powers) and third factor (relative control of district attorneys by the Attorney General and county boards of supervisors) together. *See Goldstein*, 715 F.3d at 755–58. The court determined that under the California constitution, "the Attorney General's control over the district attorney is quite limited" and does not include "dictat[ing] policy." *Id.* at 756 (citing Cal. Const. art. V, § 13). Subsequent constitutional amendments suggested "the most recent trend in California is to confirm the district attorney's place as a county officer." *Id.* at 757. This was underscored by California Government Code provisions stating that the county board of supervisors oversees the official conduct of district attorneys and treats them as "'normal'" county employees. *Id.* (quoting *McMillian*, 520 U.S. at 790 and citing Cal. Gov't Code § 24303); *see also id.* at 758 (discussing other legislative "provisions indicating that the district attorney here acts on behalf of the county," including that "counties are required to defend and indemnify the district attorney in an action for damages").

Given these factors, the Ninth Circuit concluded that "the Los Angeles County District Attorney represents the county when establishing administrative policies and training related to the general operation of the district attorney's office, including the establishment of an index containing information regarding the use of jailhouse informants." *Goldstein*, 715 F.3d at 759–60.

*Goldstein* controls. As in that case, the *McMillian* factors here show that the Riverside County District Attorney acts on behalf of the county in establishing

Plaintiff's Opposition to Defendants'                            Case No: 21cv1280
Motion for Judgment on the Pleadings

administrative policies relating to the general operation of the district attorney's office, including the establishment of a protocol for disclosing exculpatory evidence. The California Government Code locates the Riverside County District Attorney within the county level of government, authorizes the county board of supervisors to provide general supervision of the Riverside County District Attorney, and authorizes the county board of supervisors to defend and indemnify the District Attorney in actions for damages. *See Goldstein*, 715 F.3d at 755–58 (citing Cal. Gov't Code §§ 3073, 24000, 24009, 24303). By contrast, the state Constitution grants the Attorney General only limited control over the Riverside County District Attorney, and none over the type of policymaking at issue here. *See id.* at 755–57 (citing Cal. Const. art. V, § 13).

Moreover, just as the plaintiff in *Goldstein* "focuse[d] on the failure to create an index that includes information about benefits provided to jailhouse informants and other previous knowledge about the informants' reliability, and the failure to train prosecutors to use that index," 715 F.3d at 762, here, Parker focuses on the Riverside County District Attorney's administrative policies regarding the duty to disclose evidence. Not only did the District Attorney's Office fail to create a policy regarding the proper dissemination of compelling exculpatory evidence,[1] but it also had an affirmative custom and practice of intimidating and punishing lower-level prosecutors who refused to withhold this significant exculpatory evidence as a means of deterring them from complying with their constitutional obligations. *See* FAC at ¶ 62.

---

[1] On January 23, 2024, Parker requested that Defendants disclose policies in effect during the relevant period pertaining to the disclosure of exculpatory evidence, current policies pertaining to the disclosure of exculpatory evidence, and documents regarding training provided regarding the disclosure of exculpatory evidence. Defendants stated the responsive documents would be produced. To date, Parker has not received any specific policies on the topic of disclosing exculpatory evidence. Parker therefore has a good-faith basis to allege that Defendants lack any policies pertaining to disclosure of exculpatory evidence.

8

Plaintiff's Opposition to Defendants'                          Case No: 21cv1280
Motion for Judgment on the Pleadings

These administrative protocols and practices are similar to the function at issue in *Goldstein*. Thus, as in *Goldstein*, the *McMillian* factors militate a finding that the Riverside County District Attorney's Office acted as a local policymaker when establishing (or failing to establish) administrative policies and training pertaining to disclosure of compelling exculpatory evidence in the context of a prolonged detention and punishing line attorneys who sought to disclose such evidence.

Defendants nonetheless contend that the Riverside County District Attorney is a state, rather than county, official. *See* Def. Mot. at 9–12. Defendants purport to rely on *Weiner*, 210 F.3d 1025, and *Pitts v. County of Kern*, 949 P.2d 920 (1998). *See id.* at 4, 5, 10, 12. But as the court in *Goldstein* explained, neither *Weiner* nor *Pitts* is apposite here. *See Goldstein*, 715 F.3d at 760 (stating "contrary to the County's argument, our decision in *Weiner* has no bearing on this case."); *see id.* at 760–61 ("Similarly, the County is incorrect that we are bound by the California Supreme Court's determination in *Pitts*" and in any event *Pitts*'s "determination is not implicated by Goldstein's claims.").

In *Weiner*, the Ninth Circuit concluded that a district attorney's "*decision to prosecute* an individual" is made "by the authority and in the name of the people of the state" and that the district attorney therefore acts as a state rather than the county in making the decision to prosecute someone. *Goldstein*,715 F.3d at 760 (discussing *Weiner* 210 F.3d at 1030) (emphasis added). But as in *Goldstein*, Parker's *Monell* claim does not arise out of the district attorney's decision to prosecute him. Rather, as in *Goldstein*, it concerns the District Attorney's administrative policies and training (or lack thereof) regarding the duty to disclose compelling exculpatory evidence while the criminal defendant endures a prolonged detention, as well the custom and practice of intimidating and punishing line attorneys who sought to disclose such evidence. Thus, here, as in *Goldstein*, *Weiner* "does not resolve the question." *Id.* Indeed, the court in *Weiner* acknowledged that "California law suggests that a district attorney is a county officer for some purposes.'" *Weiner*, 210 F.3d at 1031. As established above, the *McMillian* factors

9

show that the Riverside County District Attorney acts as a county officer for purposes of the administrative policymaking decisions at issue here.

Defendants' reliance on *Pitts* is also misplaced. As the court in *Goldstein* noted, *Pitts* is a state-court decision that is not binding on the federal question presented to this Court. *See Goldstein*, 715 F.3d at 760–61 (holding that "42 U.S.C. § 1983 is a federal law statutory interpretation question; no deference is due to the ultimate conclusion of the California court" given that "state law does not control our interpretation of a federal statute") (internal quotation marks and citation omitted) (discussing *Pitts*, 949 P.2d at 923).[2]

More persuasive is the case law holding that a district attorney acts in a local capacity in setting administrative policies and customs to conceal exculpatory evidence. For example, in *Bellamy v. City of New York*, the Second Circuit in holding that "where prosecutors, pursuant to policy or custom, conceal exculpatory evidence and commit other wrongs in order to secure a conviction, liability rests with the county (or for New York City's constituent counties, the City)." 914 F.3d 727, 760–61 (2d Cir. 2019) (cleaned up) (citing *Goldstein*, 715 F.3d 750). Likewise, in *Walker v. City of New York,* the Second Circuit held that the municipality may be liable under *Monell* for "failure to

---

[2] The other cases Defendants purport to rely on are similarly distinguishable because none addressed the administrative and investigatory functions underlying Parker's claim. *See* Def. Mot. at 11 (citing *Jackson v. Barnes*, 749 F.3d 755 (9th Cir. 2014); *Puckett v. Cnty. of Sacramento*, 2023 WL 2432919, at *9 (E.D. Cal. Mar. 9, 2023); *Hanline v. Cnty. of Ventura*, 2017 WL 11682912, at *11 (C.D. Cal. Aug. 7, 2017); *Cotton v. Cnty. of San Bernardino*, 2016 WL 7187442, at *12 (C.D. Cal. Nov. 9, 2016)). *Lund v. Cowan*, 5 F.4th 964 (9th Cir. 2021), is also unpersuasive. There, the court observed that sovereign immunity barred the plaintiff from seeking retrospective relief under § 1983 from a state-judge defendant, not district attorneys. *See id.* at 969–70. But *Goldstein* clearly recognizes that district attorneys are, under the right circumstances, subject to § 1983 *Monell* suits. *See Goldstein*, 715 F.3d at 759–60.

---

train and supervise prosecutors to insure that they meet their constitutional obligation to turn over exculpatory material to the defense." 974 F.2d 293, 296 (2d Cir.1992).[3]

Those cases are persuasive here. The District Attorney's conduct at issue does not involve prosecutorial strategy. Instead, it concerns administrative policies and oversight

---

[3] *See also Myers v. Cnty. of Orange*, 157 F.3d 66, 77 (2d Cir. 1998) (affirming money judgment on a § 1983 claim against the district attorney's office and other officials "for a DA policy that directed the Port Jervis police and county ADAs to engage in investigative procedures that violated [plaintiffs'] equal protection rights," emphasizing that the DA was not liable "for the decision to prosecute."); *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157-58 (S.D.N.Y. 2007) (holding that "under New York law, DAs and ADAs are generally presumed to be local county officers, not state officers," and noting that "the Second Circuit recognizes a narrow exception under New York law when the prosecutor is making an individual decision whether to prosecute"); *Singh v. Bunch,* 2017 WL 117857, at *10 (E.D. Cal. Jan. 11, 2017) (declining to dismiss plaintiff's complaint, recognizing that "the Ninth Circuit has also cautioned that where the allegations of a complaint focus on the establishment of policies and training related to the general operation of the District Attorney's Office, a District Attorney acts on behalf of the county, not the state, and may be subject to suit under § 1983") (citing *Goldstein*, 715 F.3d at 753–62); *Milke v. City of Phoenix*, 2016 WL 5339693, at *16–18 (D. Ariz. Jan. 8, 2016) (citing *Goldstein* to allow *Monell* claim against a county district attorney's office for "administrative policies such as direct supervision of other prosecutors and office policies, such as the disclosure of evidence" but dismissing for not having sufficiently pled incidents establishing a custom) (citing *Goldstein*, 715 F.3d at 753, 755); *accord Altamirano v. Cnty. of Pima*, 2019 WL 3457696, at *6 (D. Ariz. July 31, 2019), *order clarified,* 2020 WL 601663 (D. Ariz. Feb. 7, 2020) ("for all purposes other than conducting [individual] prosecutions, the statute clearly indicates that the county attorney is an officer of the county"); *Briggs v. Montgomery*, 2019 WL 2515950, at *17–19 (D. Ariz. June 18, 2019) (holding "it is within each county's discretion whether to establish a deferred prosecution program" and that county attorney therefore acts on county's behalf when establishing such a program) (citing *Goldstein*, 715 F.3d at 753, 755); *Williams Decl. v. Fedor*, 69 F. Supp.2d 649, 660 (M.D. Penn. 1999) (holding Pennsylvania DA is agent of the state "when engaged in his or her basic function—enforcement of the Commonwealth's penal statutes;" however, regarding the internal "administrative responsibility to train and supervise his subordinates[,] . . . it has generally been held that when the focus of the plaintiff's civil rights claims are on the administration of the district attorney's office, the district attorney is regarded as an official of the county") (internal quotation marks and citation omitted).

11

of deputy district attorneys that frustrate employees' ability to comply with their constitutional obligation to disclose "compelling exculpatory evidence." *Tatum*, 768 F.3d at 818. Consequently, Defendants here were acting on behalf of the county. This Court should therefore deny Defendants' motion.

## II. The individual Defendants—Zellerbach, Lafferty, Fransdal, and Van Wagenen—are not entitled to the defense of absolute or qualified immunity.

Parker has also raised a *Tatum-Lee* claim against individual Defendants Zellerbach, Lafferty, Fransdal, and Van Wagenen under § 1983. FAC ¶¶ 47–54. Defendants seek to assert the defenses of absolute and qualified immunity. *See* Def. Mot. at 4–9, 14–18. But neither defense should apply. Defendants' motion for judgment as a matter of law on Parker's claim against the individual Defendants should thus be denied.

### A. The individual Defendants are not entitled to absolute immunity.

The Supreme Court has held that the defense of absolute immunity does not blanket all "the actions of a prosecutor . . . merely because they are performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Instead, the defense applies selectively depending on "the functional nature of the activities rather than [the prosecutor's] status." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *see also Fletcher v. Kalina*, 93 F.3d 653, 655 (9th Cir. 1996); *Fogle v. Sokol*, 957 F.3d 148, 159 (3d Cir. 2020); *Houston v. Partee*, 978 F.2d 362, 366 (7th Cir. 1992); *Carnevale v. DiGiovanni*, 2022 WL 4367333, at *3 (W.D. Pa. Sept. 21, 2022). Accordingly, if the official can show that their prosecutorial actions were "intimately associated with the *judicial* phase of the criminal process," such as initiating a prosecution, presenting a state's case at trial, and appearing before a judge to present evidence, they meet this burden. *Imbler*, 424 U.S. at 430 (emphasis added). But a prosecutor's "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273.

12

Defendants have the burden of "showing that overriding considerations of public policy require that they be exempt from personal liability for their alleged unlaw conduct." *Houston*, 978 F.2d at 368 (7th Cir. 1992) (internal quotation marks and citation omitted); *Burns*, 500 U.S. at 486 (noting "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question"). They have not met that burden here.

Parker acknowledges the Ninth Circuit's statement in *Broam v. Bogan* that "[a] prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is . . . an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages." 320 F.3d 1023, 1028 (9th Cir. 2003). But *Broam* did not involve the sort of especially egregious conduct that occurred in this case, where there was no probable cause to arrest and prosecutors failed to disclose exculpatory evidence prior to a judicial determination of probable cause, resulting in four years of pretrial detention of an innocent person.

This Court should recognize an exception to *Broam*'s general rule for egregious *Tatum-Lee* violations like this one. There are few, if any, other safeguards to prevent these violations other than pursuing a *Tatum-Lee* claim. And given the exceptional facts here, permitting the claim will not open the floodgates for future litigation. *See Burns*, 500 U.S. at 494 (noting that absolute immunity is intended as a deterrent to vexatious litigation). In short, public policy does not support Defendants' absolute-immunity claim.

**B.     The individual Defendants are not entitled to qualified immunity.**

Defendants also are not entitled to qualified immunity because no reasonable prosecutor would think it reasonable to continue detaining Parker after discovering Womack's confession.

The defense of qualified immunity is unavailing when "no reasonable officer" would have thought his or her conduct lawful. *Sialoi v. City of San Diego*, 823 F.3d 1223, 1234 (9th Cir. 2016). The same rule applies to prosecutors. *See Friedman v. Boucher*, 580 F.3d 847, 858 (9th Cir. 2009).

Ninth Circuit precedent would have put any reasonable prosecutor on notice that it was not reasonable to continue detaining Parker after discovering Womack's confession.

The controlling cases are *Baker* and *Lee*, which predated the conduct here. In *Baker*, the Supreme Court held that "one in [plaintiff's] position could not be detained indefinitely in the face of repeated claims of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." 443 U.S. at 144. In *Lee*, the Ninth Circuit held that "continued detention after it was or should have been known that the detainee was entitled to release" can violate the Fourteenth Amendment. *See* 250 F.3d at 683 (quotation marks and citation omitted); *see also id.* (holding that "the loss of liberty caused by an individual's mistaken incarceration after the lapse of a certain amount of time gives rise to a claim under the Due Process Clause of the Fourteenth Amendment.") (internal quotation marks and citation omitted.

Here, under *Baker* and *Lee*, no reasonable prosecutor would have thought it reasonable to continue detaining Parker after discovering Womack's confession. Indeed, even without Womack's confession, the first assigned prosecutor almost immediately recognized Parker's innocence and repeatedly complained there was no probable cause to hold him. Rather than release Parker, individual Defendants chose to replace the prosecutor. But the new assigned prosecutor raised the same concerns before uncovering even more exculpatory evidence, including Womack's jail calls. Even then, individual Defendants continued to detain Parker, knowing he was entitled to release. This is squarely a due-process violation under *Baker* and *Lee*. Individual Defendants are thus not entitled to qualified immunity.

### III.   This Court has previously rejected Defendants arguments that Parker cannot assert a *Tatum-Lee* claim against prosecutors, and this Court should reject these recycled arguments here.

Defendants' last resort is to recycle arguments that the Ninth Circuit and this Court have already addressed and rejected. Defendants contend that Parker has not asserted a valid *Tatum-Lee* claim. *See* Def. Mot. at 12–13. That's incorrect. As stated above, this

14

Court already has determined that Parker "alleges that the uncovered exculpatory evidence should have led to dismissal of the charges" and has thus stated a claim under *Tatum.* Order, Dkt. No. 74, at 10.

Defendants contend there is "no authority" for bringing a *Tatum-Lee* due-process claim against a prosecutor rather than an investigating officer. Def. Mot. at 13–14. But this Court's prior order provides just such authority. *See* Order, Dkt. No. 74, at 10. There, this Court "disagree[d]" with Defendants' identical argument that a *Tatum-Lee* claim cannot be brought against prosecutors. *Id.*

This Court has recognized that "it is nonsensical to hold that because prosecutors and not investigating officers allegedly withheld exculpatory evidence, Plaintiff cannot state a claim. The right contemplated by *Tatum* and *Lee* is a detainee's 'constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release,' not a prosecutor's right to information." Order, Dkt. No. 74, at 10 (quoting *Lee*, 250 F.3d at 683). Moreover, as this Court noted, "the prosecutors here, as attorneys experienced in criminal law, were in fact better positioned than police officers to 'underst[and] the risks to the plaintiff's rights from withholding the information'—namely, that Plaintiff would remain unjustly detained." *Id.* (quoting *Tatum*, 768 F.3d at 820).

Because Parker "alleges the same harm and violation of constitutional rights contemplated by *Tatum*, and sufficiently alleges that his prolonged detention was caused by the withholding of exculpatory evidence with deliberate indifference to his rights," he has stated "the key elements of a *Tatum-Lee* claim." *Id.* (quoting *Tatum*, 768 F.3d at 809, 816; *Lee*, 250 F.3d at 683-84). As before, this Court should therefore reject Defendants' argument here.

### IV.    Parker respectfully respects leave to amend.

Here, Parker has alleged that Defendants had a custom or practice of intimidating and punishing lower-level prosecutors who refused to withhold significant exculpatory

Plaintiff's Opposition to Defendants'                                   Case No: 21cv1280
Motion for Judgment on the Pleadings

evidence from criminal defendants whose detention is unusually prolonged. FAC at ¶ 63. But if this Court deems the complaint deficient, Parker requests leave to add allegations that will clearly establish the viability of his exculpatory-evidence and *Monell* claims as well as his request for declaratory relief. *See Gregg v. Dep't of Pub. Safety*, 870 F.3d 883, 889 (9th Cir. 2017); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) ("leave to amend shall be freely given when justice so requires") (citing Fed. R. Civ. P. 15(a)). if this Court deems the complaint deficient, Parker requests leave to amend.

Moreover, Parker respectfully requests an opportunity to amend his complaint to allege that Defendants are liable for failing to discipline prosecutors who failed to disclose exculpatory evidence, *see Bellamy*, 914 F.3d 727, and failing to establish a policy and training to guide professional discretion, *see Long v. County of Los Angeles*, 442 F.3d 1178, 1188–89 (9th Cir. 2006); *Gibson v. County of Washoe*, 290 F.3d 1175, 1195–96 (9th Cir. 2002). Parker propounded a request for production to Defendants requesting records reflecting the imposition of discipline by the Riverside County District Attorney's Office on any employee for failure to sufficiently or timely disclose exculpatory evidence. *See supra* n.1 Defendants did not produce any responsive documents and did not list any responsive document on any privilege log. *See id.* Parker therefore respectfully requests leave to file an amended complaint alleging a Monell claim for failure to supervise and discipline. There have been no deficiencies which Parker has previously failed to cure; Defendants will suffer no prejudice if Parker is granted an opportunity to amend his complaint; and amendment will not be futile Parker therefore respectfully asks this Court to exercise its discretion to permit leave to amend. *Carvalho*, 629 F.3d at 892.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' motion for judgment on the pleadings.


Dated: August 5, 2024                    SINGLETON SCHREIBER, LLP

                                         */s/ Sarah R. Weinman*
                                         Kimberly S. Trimble
                                         Sarah R. Weinman

                                         Attorneys for Plaintiff

Plaintiff's Opposition to Defendants'                    Case No: 21cv1280
Motion for Judgment on the Pleadings

**CERTIFICATE OF SERVICE**

  I certify that on August 5, 2024, I electronically filed the foregoing document: **Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings**, and that it is available for viewing and downloading from the Court's CM/ECF system, that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 5, 2024, at San Diego, California.

         */s/ Elena Munoz*
         Elena Munoz

Plaintiff's Opposition to Defendants'
Motion for Judgment on the Pleadings
         Case No: 21cv1280