UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 21-1280 JGB (DTBx)** | Date | August 21, 2024 |
| Title | *Roger Wayne Parker v. County of Riverside, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order (1) GRANTING Defendants' Motion for Judgment on the Pleadings (Dkt. No. 78); and (2) VACATING the August 26, 2024 Hearing (IN CHAMBERS)**

Before the Court is Defendants County of Riverside, Tricia Fransdal, Sean Lafferty, Jeffrey Van Wagenen, and Paul E. Zellerbach's (collectively, "Defendants") motion for judgment on the pleadings.  ("Motion," Dkt. No. 78.)  The Court finds this matter appropriate for resolution without a hearing.  See Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the August 26, 2024 hearing.

## I.    BACKGROUND

On July 29, 2021, Plaintiff Roger Wayne Parker ("Plaintiff") filed a complaint against Defendants County of Riverside (the "County"), Paul E. Zellerbach, Sean Lafferty, Tricia Fransdal, and Jeff Van Wagenen (collectively, "Defendant Prosecutors").  ("Complaint," Dkt. No. 1.)  The Complaint alleged four causes of action: (1) malicious prosecution under 42 U.S.C. § 1983 ("Section 1983"); (2) violation of the Fifth Amendment right to due process and withholding of exculpatory evidence under Section 1983; (3) unconstitutional custom, practice, or policy under Section 1983; and (4) declaratory and injunctive relief.  (See id.)

On January 19, 2022, Defendants filed a motion for judgment on the pleadings.  ("First Motion for Judgment on the Pleadings," Dkt. No. 33.)  On February 23, 2022, the Court granted-in-part and denied-in-part the Motion for Judgment on the Pleadings.  ("Judgment on the

Pleadings Order," Dkt. No. 44.)  The Court dismissed Plaintiff's claims for malicious prosecution and declaratory and injunctive relief.  (See id.)  Plaintiff's Brady and Monell claims survived.  (Id.)

On March 28, 2022, Defendants filed a motion to certify the Court's Judgment on the Pleadings Order for interlocutory appeal.  ("Motion for Interlocutory Appeal," Dkt. No. 47.)  On May 5, 2022, the Court granted the Motion for Interlocutory Appeal.  (See Dkt. No. 55.)  The Ninth Circuit also granted Defendants' petition for permission to appeal.  (See Dkt. No. 56.)  On June 30, 2022, Defendants appealed the Court's Judgment on the Pleadings Order to the Ninth Circuit.  (See Dkt. No. 58.)

On August 15, 2023, the Ninth Circuit reversed the Court's denial of Defendants' First Motion for Judgment on the Pleadings as to the Brady claim and remanded the case.  ("Ninth Circuit Order," Dkt. No. 63.)  The Ninth Circuit held that Plaintiff cannot state a Brady claim because he does not allege that Defendants' nondisclosure would have changed the result of any proceeding in his criminal case.  (Id. at 10.)  The Ninth Circuit reasoned that "[a] Brady violation requires that the withheld evidence have a reasonable probability of affecting a judicial proceeding, and no such proceeding was affected here."  (Id. at 4.)  However, the Ninth Circuit explicitly stated that on remand, Plaintiff could seek leave to amend his complaint to assert a different due process claim (i.e., a Tatum–Lee claim).  (Id. at 11.)  In Tatum v. Moody, the Ninth Circuit held that a defendant can state a due process claim arising out of "continued detention after it was or should have been known that [he] was entitled to release."  768 F.3d 806, 816 (9th Cir. 2014) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 683 (9th Cir. 2001)).  On September 6, 2023, the official mandate of the Ninth Circuit issued.  (Dkt. No. 65.)

On September 6, 2023, Defendants lodged an amended proposed order for judgment on the pleadings.  ("Amended Proposed Order," Dkt. No. 64.)  Plaintiff opposed the Amended Proposed Order, arguing that "it would be premature for this Court to grant judgment on the pleadings to Defendants without allowing Plaintiff the opportunity to seek to amend his complaint."  (Dkt. No. 66.)  The Court reopened the case and granted Plaintiff leave to amend his Complaint on September 19, 2023.  (Dkt. No. 68.)

Plaintiff filed a First Amended Complaint on September 29, 2023.  ("FAC," Dkt. No. 69.)  The FAC alleges five causes of action: (1) malicious prosecution under Section 1983; (2) Tatum-Lee claim under Section 1983; (3) Monell claim for unconstitutional custom, practice, or policy under Section 1983 for malicious prosecution; (4) Monell claim for unconstitutional custom, practice, or policy under Section 1983 for Tatum-Lee violations; and (5) declaratory and injunctive relief.  (FAC.)

On October 20, 2023, Defendants moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  ("MTD," Dkt. No. 70.)  On November 21, 2023, the Court granted-

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

in-part and denied-in-part the MTD.  ("MTD Order," Dkt. No. 74.)  The Court dismissed the malicious prosecution claim and <u>Monell</u> claim for malicious prosecution without leave to amend. (<u>Id.</u> at 12.)  The Court also dismissed the declaratory relief claim with leave to amend.  (<u>Id.</u>)

Plaintiff did not file an amended complaint.  As such, Plaintiff's remaining claims in the FAC are: (1) <u>Tatum-Lee</u> claim under Section 1983; and (2) <u>Monell</u> claim for unconstitutional custom, practice, or policy under Section 1983 for <u>Tatum-Lee</u> violations.  (<u>See</u> FAC.)

On June 3, 2024, Defendants filed the Motion.  (Motion.)  On August 5, 2024, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 85.)  Defendants replied on August 12, 2024. ("Reply," Dkt. No. 86.)

## II.    FACTUAL ALLEGATIONS

Plaintiff alleges the following facts, which are assumed to be true for the purposes of this Motion.  <u>Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.</u>, 896 F.2d 1542, 1550 (9th Cir. 1989) (citing <u>Doleman v. Meiji Mut. Life Ins. Co.</u>, 727 F.2d 1480, 1482 (9th Cir. 1984)).  Plaintiff alleges that he was prosecuted for a murder that the Riverside County District Attorney's Office knew he did not commit.  (FAC at 3-8.)  On March 18, 2010, Brandon Stevenson was murdered in the home of Plaintiff's roommate, Willie Womack.  (<u>Id.</u> ¶ 4.)  Plaintiff was not home when the police arrived at the scene and, after returning home, he was detained and questioned by the police.  (<u>Id.</u> ¶ 5.)  Plaintiff, who is developmentally delayed, ultimately confessed to the murder, though he "said he made the whole thing up because they kept pressuring him to say something."  (<u>Id.</u>; "Ex. A," Dkt. No. 69-1.)

The first prosecutor assigned to the case, Deputy D.A. Lisa DiMaria, recognized Plaintiff's confession as a sham because it was coerced and inconsistent with physical evidence. (FAC ¶ 6.)  DiMaria expressed "serious concerns" about Plaintiff's guilt in a March 2010 staff meeting and, on July 22, 2011, wrote a memo to her supervisors requesting authorization to "no file (i.e., dismiss)" the case after the preliminary hearing.  (<u>Id.</u> ¶ 7.)  Instead of dismissing the case, Defendant Sean Lafferty, who was a supervisory Assistant D.A., removed DiMaria from the case and reassigned it to Deputy D.A. Chris Ross.  (<u>Id.</u> ¶ 8.)  According to Ross, Lafferty and Defendant Tricia Fransdal (another supervisory D.A.) told him that the case was reassigned to him because DiMaria thought Plaintiff was innocent.  (<u>Id.</u> ¶ 9.)

Through memos and conversations from 2011 through 2014, Ross told Defendant Lafferty that he believed Plaintiff was being held without probable cause.  (<u>Id.</u> ¶¶ 10-12.) Defendants Zellerbach, Lafferty, Van Wagenen, and Fransdal (the "Individual Defendants"), and other supervisory assistant D.A.s refused to dismiss the case.  (<u>Id.</u> ¶ 13.)  Ross also raised his concerns about Plaintiff's guilt to Riverside Superior Court Judge Jack Ryan, suggesting that Judge Ryan could dismiss the case after conducting the preliminary hearing—Judge Ryan told Ross that he would not dismiss the case because he wanted to get reelected.  (<u>Id.</u> ¶ 14.)  Plaintiff was in jail during this entire period.  (<u>Id.</u> ¶ 13.)

In fall 2013, Ross obtained recordings of jail telephone calls where Womack—Plaintiff's former roommate—admitted to the murder. (<u>Id.</u> ¶ 15.)  Ross promptly informed Defendant Lafferty, who told Ross not to disclose the calls to Plaintiff's attorney and then removed Ross from the case. (<u>Id.</u> ¶¶ 16-17.)  Approximately six months later, Defendant Fransdal moved to dismiss the case without prejudice due to insufficiency of the evidence. (<u>Id.</u> ¶ 18.)

Plaintiff was unaware of Womack's recorded confession and of the internal memoranda written by DiMaria and Ross until October 2020. (<u>Id.</u> ¶ 20.)  On July 21, 2021, Plaintiff filed a Petition to Seal and Destroy Arrest Records pursuant to California Penal Code Section 851.8. (<u>Id.</u> ¶ 21.)  In that petition, Plaintiff requested relief from the two-year time restriction to file such a petition because he did not learn of the recorded jail calls until October 2020. (<u>Id.</u>)  Plaintiff's petition was granted during an August 23, 2021 hearing—the judge did not decide whether the recorded confession had ever been turned over to Plaintiff or his criminal defense attorney. (<u>Id.</u>)

### III.    LEGAL STANDARD

Defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"). Fed. R. Civ. P. 12(c) ("After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings.").  Like a Rule 12(b)(6) motion, a Rule 12(c) motion challenges the legal sufficiency of the opposing party's pleadings.  For purposes of a Rule 12(c) motion, the allegations of the non-moving party must be accepted as true. <u>Hal Roach Studios, Inc.</u>, 896 F.2d at 1550.  Further, all allegations of the non-moving party must be construed in favor of that party. <u>Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church</u>, 887 F.2d 228, 230 (9th Cir. 1989).  Judgment on the pleadings is proper when the moving party establishes that no material issue of fact remains to be resolved and it is entitled to judgment as a matter of law. <u>Hal Roach</u>, 896 F.2d at 1550.

### IV.    DISCUSSION

Defendants move for judgment on Plaintiff's: (1) <u>Tatum-Lee</u> claim; and (2) <u>Monell</u> claim based on <u>Tatum-Lee</u> violations. (<u>See</u> Motion at 1.)  First, Defendants argue that Defendant Prosecutors are entitled to absolute immunity for the <u>Tatum-Lee</u> claim. (<u>See id.</u>)  Second, they argue in the alternative that Defendant Prosecutors are entitled to qualified immunity for the <u>Tatum-Lee</u> claim. (<u>See id.</u>)  Finally, Defendants contend that the County cannot be held liable under <u>Monell</u> because Defendant Prosecutors were state actors subject to sovereign immunity. (<u>See id.</u> at 2.)  The Court addresses these arguments in turn.

### A.    Absolute Immunity

Defendants first argue that Defendant Prosecutors are entitled to absolute immunity for the <u>Tatum-Lee</u> claim because prosecutorial decisions regarding whether to disclose exculpatory evidence are part of the prosecutorial-advocate function. (<u>See id.</u> at 5-7.)  Under Section 1983, certain government officials are entitled to absolute immunity from damages liability when

performing certain functions.  This "functional approach" looks to "the nature of the function performed, not the identity of the actor who performed it."  Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993) (quoting Forrester v. White, 484 U.S. 219, 229 (1988)).  The Supreme Court has concluded that the activities of prosecutors which are "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity.  Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  Thus, a prosecutor is absolutely immune from liability for "initiating a prosecution" and "presenting the State's case."  Id. at 431.  Moreover, an attorney "supervising a trial prosecutor who is absolutely immune is also absolutely immune."  Garmon v. Cty. of Los Angeles, 828 F.3d 837, 845 (9th Cir. 2016).  However, a prosecutor's "administrative duties" and "investigatory functions" which do not relate to an "advocate's preparation for the initiation of a prosecution or for judicial proceedings" are not entitled to absolute immunity.  Buckley, 509 U.S. at 273.  Instead, prosecutors performing investigative functions "normally performed by a detective or police officer" are protected only by qualified immunity.  See id. at 273.

"Determining what functions are prosecutorial is an inexact science."  Lacey v. Maricopa Cty., 693 F.3d 896, 912 (9th Cir. 2012).  Since Imbler, the Supreme Court has held that absolute immunity applies when a prosecutor appears in court to apply for a search warrant, Burns v. Reed, 500 U.S. 478, 492 (1991), and to supervisory prosecutors' management of trial-related information systems.  Van de Kamp v. Goldstein, 555 U.S. 335, 349 (2009).  Conversely, absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, Burns, 500 U.S. at 496, when a prosecutor makes statements to the press, Buckley, 509 U.S. at 277, or to a prosecutor's fabrication of evidence during a preliminary investigation.  Id. at 275.  Although the Supreme Court has resisted drawing a bright line between investigative and advocacy work, it has noted a prosecutor "neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested."  Id. at 274.  Thus, "[t]here is a difference between the advocate′s role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective′s role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand."  Id. at 273.

Here, Plaintiff's Tatum-Lee claim against Defendant Prosecutors is based on the allegation that Defendant Prosecutors "deliberately withheld [] conclusively exculpatory evidence from Plaintiff" during Plaintiff's ongoing pretrial detention.  (See FAC ¶ 51.)  Plaintiff argues that Defendant Prosecutors' alleged decision to withhold exculpatory evidence was "associated with the *judicial* phase of the criminal process" and therefore was an investigatory function.  (See Opposition at 12.)  However, on this issue, Ninth Circuit precedent is clear: "A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is . . . an exercise of prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages."  Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003).  In fact, Imbler itself states that the "deliberate withholding of exculpatory information," while "reprehensible" and "warranting . . . disbarment," is included in the "legitimate exercise of prosecutorial discretion."  424 U.S. at 431-32 n.34.  Plaintiff does not identify, nor can this Court locate, any cases within this Circuit in which a court has strayed from the rule that a

---

prosecutor is entitled to absolute immunity for his decision to withhold exculpatory evidence. (See Opposition at 12-13.)  By contrast, courts regularly grant absolute immunity to prosecutors under similar circumstances.  See, e.g., Gantt v. County of Los Angeles, 2009 WL 10659755, at *4 (C.D. Cal. Apr. 9, 2009) (granting a defendant absolute immunity where the plaintiff argued the defendant withheld exculpatory evidence at trial, because the act was "an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity"); Hanline v. County of Ventura, 2016 WL 11746158, at *4 (C.D. Cal. Sept. 21, 2016) ("[T]he Ninth Circuit has been very clear that Brady violations [for withholding exculpatory evidence] are covered by absolute prosecutorial immunity, even if they relate to a prosecutor's actions 'before the prosecution' of a suspect."); Colonies Partners LP v. County of San Bernardino, 2018 WL 6074577, at *7 (C.D. Cal. July 12, 2018) ("[A]llegations claiming AG Defendants withheld exculpatory evidence [are] protected by absolute immunity."); Wilkins v. State of California, 2021 WL 9315231, at *10 (C.D. Cal. Nov. 4, 2021) (holding that the defendant prosecutors were entitled to absolute immunity for failure to turn over exculpatory evidence).

Plaintiff asks the Court to create a novel "exception to Broam's general rule for egregious Tatum-Lee violations." (See Opposition at 13.)  And while the Court acknowledges that the allegations of withheld evidence and Plaintiff's lengthy, and unjustified, detention are repugnant, it cannot construct a workable definition of a Tatum-Lee violation that is so egregious as to defeat absolute immunity.  As the Court in Imbler explained when declining to distinguish between the willful use of perjured testimony and the willful suppression of exculpatory information, "the distinction is not susceptible of practical application."  424 U.S. at 431-32 n.34.  Ultimately, the Court granted both "reprehensible" acts the protection of absolute prosecutorial immunity.  Id. ("Denying absolute immunity from suppression claims could thus eviscerate, in many situations, the absolute immunity from claims of using perjured testimony.").  And while the Court agrees, as Plaintiff argues, that Broam's rule leaves "few, if any, other safeguards to prevent these violations," the Imbler Court contemplated, and accepted, such an outcome. (See Opposition at 13.)  "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty.  But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." Imbler, 424 U.S. at 427.  This Court cannot stray from Imbler and Broam's clearly defined rule.

Accordingly, the Court finds that Defendant Prosecutors are entitled to absolute immunity for their alleged Tatum-Lee violations.  The Court further finds that leave to amend the Tatum-Lee claim would be futile.  As such, the Court **GRANTS** the Motion as to the Tatum-Lee claim and **DISMISSES** the claim **WITHOUT LEAVE TO AMEND**.

## B.    Monell Claim

Defendants argue that the County cannot be held liable under Monell because Defendant Prosecutors were acting as state, not county, officials. (See Motion at 9-10.)  In Monell, the U.S. Supreme Court held that a municipality may be held liable as a "person" under Section 1983 but cautioned that a municipality may not be held liable for the unconstitutional acts of its employees solely on a respondeat superior theory.  Hunter v. County of Sacramento, 652 F.3d 1225, 1232

(9th Cir. 2011) (citing <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691 (1978)); <u>see</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989) ("Respondeat superior or vicarious liability will not attach under § 1983.")).  Accordingly, a municipality may be held liable under Section 1983 only where "the municipality *itself* causes the constitutional violation at issue."  <u>City of Canton</u>, 489 U.S. at 385.  In general, "local governments are responsible only for 'their *own* illegal acts.'"  <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011) (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479 (1986)).

Pursuant to <u>Monell</u>, a local government may be liable under Section 1983 for constitutional torts committed by its officials according to municipal policy, practice, or custom.  <u>Weiner v. San Diego County</u>, 210 F.3d 1025, 1028 (9th Cir. 2000).  To hold a local government liable for an official's conduct, a plaintiff must establish that the official: (1) "had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue'"; and (2) "was the policymaker for the local governing body for the purposes of the particular act."  <u>Id.</u> (citing <u>McMillian</u>, 520 U.S. 781, 785 (1997)).  Plaintiff alleges that Defendant Zellerbach was the final policymaker concerning the prosecution of Riverside County criminal cases.  (<u>See</u> FAC ¶ 63.)  Defendants contest only the second prong and argue that Defendant Zellerbach acted as a *state*, rather than county, official when he decided to proceed with Plaintiff's prosecution.  (<u>See</u> Motion at 10.)  The Court agrees.

The question before the Court is whether Defendant Zellerbach "acted as a county official or state official when he decided to proceed with [Plaintiff's] criminal prosecution," not whether he acted as a state or county official for every type of action in which he engaged.  <u>See</u> <u>Weiner</u>, 210 F.3d at 1028 (citing <u>McMillian</u>, 520 U.S. at 785).  This question "is dependent on an analysis of state law."  <u>McMillian</u>, 520 U.S. at 786 (internal quotations and citations omitted).  It is well-established that "a California district attorney is a state officer when deciding whether to prosecute an individual," even if a district attorney is not a "state officer[] for all purposes."  <u>Weiner</u>, 210 F.3d at 1031; <u>see also</u> <u>Morrison v. City of Los Angeles</u>, 2019 WL 2122985, at *5 (C.D. Cal. May 15, 2019) ("County district attorneys represent the state when they prepare to and prosecute crimes or train and develop policies for prosecutorial staff in the area of criminal investigation and prosecution.") (internal quotations and citations omitted).  By contrast, a California district attorney acts as a county official when the challenged conduct "does not involve prosecutorial strategy, but rather administrative oversight of systems used to help prosecutors comply with their constitutional duties."  <u>Goldstein v. City of Long Beach</u>, 715 F.3d 750, 762 (9th Cir. 2013).  Notably, "[a]ll relevant California cases . . . have held that district attorneys are state officers for the purpose of investigating and proceeding with criminal prosecutions."  <u>Weiner</u>, 210 F.3d at 1030.

Here, Plaintiff's <u>Monell</u> claim is based on the allegation that "the withholding of significant exculpatory evidence from Plaintiff . . . was ratified by the final policymaker, Defendant Zellerbach."  (FAC ¶ 63.)  Plaintiff further alleges that "Defendant Zellerbach knew of his employees' decision to withhold significant exculpatory evidence[,] . . . deliberately made a choice to approve of his employees' acts[,] . . . [and] ratified the actions . . . that resulted in the continued prosecution and prolonged detention of Plaintiff."  (<u>Id.</u>)  These allegations all pertain

to Defendant Zellerbach's acts and omissions in prosecuting Plaintiff's criminal case, and to his decision to continue prosecuting Plaintiff. As such, the Court finds that Defendant Zellerbach acted as a state official in his alleged decision to withhold exculpatory evidence and continue prosecuting Plaintiff. See Hanline v. County of Ventura, 2017 WL 11682912, at *11 (C.D. Cal. Aug. 7, 2017) (holding that the county could not be liable under Monell because the claims "all pertain[ed] to [the district attorney's] acts and omissions prosecuting Plaintiff's criminal case"); Pellerin v. Nevada County, 2013 WL 1284341, at *4 (E.D. Cal. Mar. 28, 2013) (holding that a district attorney's office was "deemed to be a state agency when involved in prosecutorial activities," which included a failure to turn over Brady evidence); Nazir v. County of Los Angeles, 2011 WL 819081, at *7-8 (C.D. Cal. Mar. 2, 2011) (finding that a district attorney's office was involved in prosecutorial activities and acted for the state when creating a procedure to place police officers on Brady lists).

Plaintiff responds that Defendant Zellerbach acted for the county, not the state, because he "fail[ed] to establish policies and training on disclosing exculpatory evidence and [created] a custom or practice of intimidating and punishing line attorneys who sought to disclose such evidence." (See Opposition at 6.) In doing so, Plaintiff relies on Goldstein, in which the Ninth Circuit held that California district attorneys act as county officials when "establishing policy and training related to the use of jailhouse informants." 715 F.3d at 762. But Plaintiff's argument fails for two reasons. First, the FAC is devoid of any allegations related to policies, training, or Defendant Zellerbach's involvement in any policies or training. (See FAC.) Instead, it alleges only that Defendant Zellerbach ratified his employees' decisions to withhold exculpatory evidence and continue Plaintiff's prosecution—clear prosecutorial, rather than administrative, activities. (See id. ¶¶ 60-65.) Second, and critically, Goldstein makes clear that its holding is limited to "administrative oversight of systems used to help prosecutors comply with their constitutional duties," and does not "involve prosecutorial strategy." 715 F.3d at 762. The court states specifically that "[t]here can be a meaningful analytic distinction between policies and training related to prosecutorial functions and an index made and maintained as an administrative matter." Id. (internal quotations omitted). Unlike Goldstein's administrative index of jailhouse informants, policy and training related to the disclosure of evidence and a defendant's continued prosecution involves prosecutorial strategy. As such, even if Plaintiff alleged that Defendant Zellerbach failed to establish policies and training on the disclosure of exculpatory evidence, those policies and training would be related to prosecutorial functions. See Morrison, 2019 WL 2122985, at *5 ("County district attorneys represent the state when they . . . *train and develop policies* for prosecutorial staff in the area of criminal investigation and prosecution.") (internal quotations omitted) (emphasis added).

The Court finds that Defendant Zellerbach acted as a state official when he allegedly ratified decisions to withhold evidence and continue Plaintiff's prosecution. As such, Plaintiff's Monell claim fails because "the 11th Amendment dictates that the State, its agencies, and its officials acting in their official capacity cannot be sued for money damages." Id. (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983.")). The Court further finds that leave to amend would be futile, because any additional allegations that Defendant Zellerbach

failed to establish policies and training on the disclosure of exculpatory evidence would still fall under the ambit of prosecutorial functions.

The Court **GRANTS** the Motion as to the <u>Monell</u> claim and **DISMISSES** the claim **WITHOUT LEAVE TO AMEND**.

## V.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1.  Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

2.  The FAC is **DISMISSED WITHOUT LEAVE TO AMEND**.

3.  The Clerk is **DIRECTED** to close the case.

4.  The August 26, 2024 hearing is **VACATED**.


   **IT IS SO ORDERED.**